HALBERT E. NEGUS *vs.* HENRY FOOTE.

Franklin. September 17, 1917. — October 30, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & PIERCE, JJ.

*Husband and Wife. Alienation of Affections. Enticement and Seduction. Evidence*, Circumstantial, Matters of common knowledge.

In an action for enticing and seducing the plaintiff's wife and thereby depriving the plaintiff of connubial consortium, where there is evidence of inclination and opportunity for adultery between the plaintiff's wife and the defendant, the plaintiff may be allowed to prove that, after he had lived apart from his wife for more than a year during a period when the defendant was living in the same house with the plaintiff's wife, the plaintiff's wife had a child.

It here was *said* that the jury could find as a matter of common knowledge and experience that a child born on a certain day was begotten approximately nine months before.

In the same case, in addition to the evidence above described, there was evidence that, when the plaintiff's wife was well advanced in pregnancy and the defendant knew her condition, he said, "that he would be very glad to marry her if it was so that he could, if it was so that she could get married." *Held*, that the case, including the evidence wrongly excluded, should have been submitted to the jury.

TORT for enticing and seducing the plaintiff's wife and thereby winning her affections and alienating her affections from the plaintiff, by reason of which the plaintiff lost the "affection, aid, assistance, comfort and consortium" of his wife. Writ dated September 7, 1915.

In answer to a motion by the plaintiff for specifications, the defendant filed specifications, in which he alleged that the enticement and seduction took place at Millers Falls in the town of Montague, that the defendant had unlawful sexual intercourse

with the plaintiff's wife at that place, and, as to other times and places at which the defendant had unlawful intercourse with the plaintiff's wife, alleged that these were at Millers Falls in the town of Montague in the house occupied before September, 1914, by the plaintiff and his wife, Mabel L. Negus.

The specifications concluded as follows:

"The plaintiff says that it is impossible to answer more fully the specific interrogatories of the defendant in the manner and form in which the same are set forth in the defendant's motion for specifications, but the plaintiff more fully specifies as follows: That the conduct of the defendant and the said Mabel L. Negus prior to, and after, September, 1914, was such as to show an adulterous disposition; that the plaintiff was not at home after September 12, 1914, and had no intercourse with his wife the said Mabel L. Negus after that date; that the defendant during the months of December, 1914, and January and February, 1915, occupied the same house with the said Mabel L. Negus, that a child was born to the said Mabel L. Negus on the fifth day of October, 1915.

"These specifications apply to both count one and count two of the plaintiff's declaration."

The defendant moved to expunge the matter contained in the last two paragraphs of the specifications as irrelevant and immaterial. His motion was allowed by *Aiken*, C. J.

The plaintiff then amended his declaration by adding a third count as follows:

"Count 3. And the plaintiff says that Mabel L. Negus is his lawfully wedded wife; that the defendant on or about the first day of January A. D. 1915 at Montague in the county of Franklin and at divers other times did have unlawful carnal knowledge of the body of the said Mabel L. Negus and did beget upon the body of the said Mabel L. Negus a child, of which child she was delivered on the fifth day of October A. D. 1915; whereby and by reason whereof the plaintiff lost the aid, comfort, and consortium of his said wife and was otherwise greatly injured and damaged."

The amendment was allowed by *Aiken*, C. J. The defendant demurred to the third count of the declaration as amended on the ground that a declaration, that a child born by the plaintiff's wife after her marriage to the plaintiff was illegitimate, was inadmissible on the part of the plaintiff.

The demurrer was overruled by *Aiken*, C. J., and the defendant appealed.

The case was tried before *Aiken*, C. J. The evidence introduced is described in the opinion. The plaintiff made the following offer of proof: "The plaintiff offers to show that from early September, 1914, until May, 1915, Negus, the plaintiff, did not have access to his wife; that during the months of January and February, 1915, Foote, the defendant, roomed and boarded in the house in which the plaintiff's wife lived and was the only man living there; that he had roomed and boarded there to some extent during November and December and there had been much intimacy between them for at least six months; that in midsummer Mr. Daly saw this woman in the family way in July and that she gave birth to a child on the fifth of October, 1915."

The Chief Justice ruled as follows: "The court excludes the offer to show the condition of Mrs. Negus in July and the birth of the child in October. I do not exclude any evidence of intimacy in respect to conduct further that you desire to show. You have already shown that. I do not know whether it is offered as an offer to show more than you have shown. If it is, I am not excluding it, but those two features of your offer I will exclude." The plaintiff excepted to the exclusion of the evidence.

The Chief Justice ruled that the action could not be maintained upon the evidence presented, and directed the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*H. E. Ward*, (*F. L. Greene* with him,) for the plaintiff.

*W. A. Davenport*, for the defendant, submitted a brief.

BRALEY, J. The cause of action stated in each count of the amended declaration is for loss of consortium, and the allegation of the alienation of the affections of the plaintiff's wife through the alleged acts and conduct of the defendant only go in aggravation of damages. *Hadley* v. *Heywood*, 121 Mass. 236. *Nolin* v. *Pearson*, 191 Mass. 283, 287, 288. While the action can be maintained without proof of adultery, *Nolin* v. *Pearson, ubi supra, Webber* v. *Benbow*, 211 Mass. 366, 368, it is clear upon the record that to make out a case for the jury the plaintiff was obliged to offer evidence of his wife's infidelity in which the defendant was a participant. It has long been settled that previous acts of familiarity, unless in the discretion of the judge they are too remote,

are admissible to show an adulterous disposition, and there is no difference between acts of familiarity and actual adultery, when offered for the purpose indicated, except in the additional weight and significance of the latter act. *Beers* v. *Jackman,* 103 Mass. 192. *Thayer* v. *Thayer,* 101 Mass. 111. It was one link in the chain of proof to show adultery by the wife, and as the jury would have been warranted in finding non-access by the plaintiff during the entire period covered by the offer of proof which was excluded, evidence that his wife had been delivered of a child tended to prove the offence. *Commonwealth* v. *Morrissey,* 175 Mass. 264. See *Commonwealth* v. *Gray,* 129 Mass. 474. But, if no evidence had been introduced from which in connection with the offer of proof the jury would have been warranted in finding that the defendant was the father, the plaintiff has not been prejudiced. "The evidence by which the act of adultery is proved is seldom direct. The natural secrecy of the act makes it ordinarily impossible to prove it, except by circumstantial evidence," and "The intent and disposition of the parties toward each other must give character to their relations, and can only be ascertained, as all moral qualities are, from the acts and declarations of the parties." To this end their antecedent and subsequent conduct are admissible if it has a tendency to prove the fact. *Thayer* v. *Thayer, ubi supra.*

The ruling excluded proof of the birth of a child on October 5, 1915. If the jury found that the wife was delivered on this date they further could find in accordance with common knowledge and experience that the child was begotten nine months previously, or approximately in January, 1915. The defendant was employed as a chauffeur by the plaintiff's father-in-law, one Ross. The plaintiff with his wife and minor daughter kept house by themselves, but the defendant boarded and lodged with his employer. During the summer of 1914 the plaintiff's wife and the defendant "were riding together a good deal . . . were frequently in the garage together and often sat together upon the porch in the evening." And the plaintiff further testified that "his wife frequently remained in the garage with Foote in the evening after every one else had left;" that he had "seen the lights go out, and I have waited perhaps fifteen minutes before my wife would show up;" that "he remonstrated with his wife about her conduct and

that such conduct on her part was the cause of his going away from his home" finally in September, 1914, since which time he has not lived with his wife.

The defendant testified that he knew of the plaintiff's absence, and that "soon after Thanksgiving in 1914, at the request of Mrs. Ross, . . . he boarded and roomed in the house of Mrs. Negus; . . . that he left the employ of Ross about February, 1915," but returned "sometime in May, 1915," and then stayed at the Ross house where "he had a room on the second floor" and "that Mrs. Negus had a room which did not adjoin his on the second floor." And a witness for the plaintiff testified that in July, 1915, when as the jury could say Mrs. Negus was well advanced in pregnancy and the defendant knew of her condition, he said, "that he would be very glad to marry her if it was so that he could, if it was so that she could get married." We are of opinion there was evidence from which the existence of an adulterous inclination or desire between the defendant and Mrs. Negus could be found, with an opportunity for coition at a period which would charge him with the paternity of the child. Or in other words, it was for the jury using the logic of common experience to consider, under appropriate instructions, cause and effect, and to determine whether all the circumstances were reasonably sufficient to establish the defendant's guilt, or whether they were equally compatible with his innocence. *Thayer* v. *Thayer, ubi supra. Beers* v. *Jackman, ubi supra. Commonwealth* v. *Bean,* 137 Mass. 570, 571. *Sullivan* v. *Hurley,* 147 Mass. 387. *Francis* v. *Rosa,* 151 Mass. 532. The case of *Commonwealth* v. *O'Connor,* 107 Mass. 219, on which the defendant relies is clearly distinguishable. Compare *Commonwealth* v. *Morrissey,* 175 Mass. 264.

The evidence should have been admitted, and the exceptions must be sustained.

*So ordered.*