## ANNA G. WHITE vs. MARION R. ELY.

Franklin.  September 16, 1919. — December 1, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, &
JENNEY, JJ.

*Adultery.  Evidence,* Of adultery.

At the trial of an action of tort by one woman against another, charging that the
defendant "wrongfully and wickedly debauched and carnally knew" the plain-
tiff's husband, there was evidence tending to show that the plaintiff had sep-
arated from her husband, a physician; that more than three years thereafter
the defendant's son had called the husband to treat the defendant, who then was
suffering from a physical and nervous breakdown; that ten months later the
defendant purchased a farm for her son to which she and her son moved, and
that the plaintiff's husband gave up his practice as a physician and with his
minor son lived at the farm with the defendant and her son, occupying a room
there not connected with the defendant's apartments.  The husband testified
that conduct of his wife compelled him to give up his practice, and that he
cared for the farm in consideration of his son and himself receiving their board
and clothing.  Although the defendant and the plaintiff's husband frequently
were seen in each other's company, there was no evidence of immodest conduct,
of indecent familiarity nor of clandestine meetings or compromising language
or situation.  *Held,* that a finding that the defendant committed adultery with
the plaintiff's husband was not warranted.

TORT, the plaintiff alleging that the defendant "wrongfully and
wickedly debauched and carnally knew" the plaintiff's husband.
Writ dated October 22, 1917.

In the Superior Court the action was tried before *Aiken,* C. J.
The material evidence is described in the opinion.  At the close of
the evidence, the defendant moved that a verdict be ordered for
her.  The motion was denied.  There was a verdict for the plaintiff
in the sum of $15,000; and the defendant alleged exceptions.

The case was argued at the bar in September, 1919, before
*Rugg,* C. J., *Braley, De Courcy, Crosby, & Carroll,* JJ., and after-
wards was submitted on briefs to all the Justices.

*E. F. McClennen,* (*F. J. Lawler* with him,) for the defendant.
*W. A. Davenport,* for the plaintiff.

CARROLL, J.  The plaintiff alleged that the defendant com-
mitted adultery with her husband on March 1, 1917, and upon

other days and times between that date and September 4, 1917. At the close of the evidence the defendant filed a written motion asking that a verdict be directed in her favor; the motion was denied and the defendant excepted. There was a verdict for the plaintiff of $15,000.

The plaintiff was married to J. Lewis White in 1899. In 1907 he was a practising physician in East Orange, New Jersey. In 1910 she separated from him, but in 1912 returned, and lived with him until May, 1913. In that year he began proceedings for divorce against her in the courts of New Jersey, alleging adultery; the divorce was denied on the ground that the act complained of was connived at and consented to by her husband.

In November, 1916, White was called by the defendant's son (who was eighteen years of age at the time of the trial) to her home in Orange, New Jersey, where she was confined to her bed suffering from a physical and nervous breakdown. He began treating her professionally and continued to do so until the fall of 1917. In September of that year Mrs. Ely came to Greenfield and with her son occupied a farm, on the Bernardston Road, which she had purchased for him. About this time White gave up his practice and with his son (about thirteen years of age) came to live at the Ely farm. There was evidence that White and the defendant went together on automobile trips, and, with the two boys, attended moving picture performances on three or four occasions. White testified that he was annoyed by his wife's calling up his patients; that he was ordered to pay her alimony; that she had attached his furniture, his bank account and all of his property, and he found it impossible to comply with the order of the court and make the payments; that he was unable to continue his profession with the many processes served upon him; that at the request of the defendant's son he came to Bernardston, and in consideration of his caring for the farm he and his son were to receive their board and clothing. White occupied a room in the house of the defendant's son, not connected with the defendant's apartments.

*Negus* v. *Foote*, 228 Mass. 375, relied on by the plaintiff, was an action of tort for seducing the plaintiff's wife. In that case there was evidence of opportunity to commit the offence which would charge the defendant with the paternity of the child.

In *Brooks* v. *Brooks*, 145 Mass. 574, a libel for divorce charging the adultery of a wife, it was said at page 575: "It is settled that evidence of indecent familiarities with the person with whom adultery is charged . . . is admissible to explain the character of ambiguous conduct relied on as evidence of the act of adultery in issue."

In the case at bar the record discloses no evidence of an adulterous disposition on the part of the defendant and White, or of opportunity to commit the offence, other than the fact that they both lived in the same house. Although frequently in each other's company, there was no evidence of immodest conduct, or indecent familiarity, nor of clandestine meetings or compromising language or situation. The reputation of Mrs. Ely for chastity was not attacked and she was not seen in the company of White at any unusual resort where there was opportunity for the commission of the crime.

The material facts relied on to prove the charge are that White gave up his practice where he earned $2,500 a year, to assume the management of the farm owned by the defendant's son; and that the parties lived in the same house and were frequently in each other's company. These facts with all the inferences to be drawn from them, go no further than to show the association of the defendant and White, and fall short of proving the offence alleged. The mere association of a man and woman, however frequent and extended, is not of itself under the circumstances disclosed in the case at bar sufficient to prove the crime of adultery. A man and woman may be brought daily together for the transaction of business, they may live in the same house and be frequently seen in each other's company, but these facts are not enough to show adultery, even where it may be conceded opportunity exists to commit the offence. The offence is not established under these conditions unless there is some evidence of speech or conduct indicating an adulterous disposition.

However unusual the conduct of White in leaving the practice of his profession, taking his son to another State and living in the home of a former patient, his explanation of the change if believed was consistent with innocence, and if not believed does not show his guilt. There was no evidence of suspicious circumstances such as would "lead the guarded discretion of a reason-

able and just man to the conclusion of guilt." *Thayer* v. *Thayer,* 101 Mass. 111, 113.

The plaintiff argues that the jury saw the conduct of the defendant and White toward each other during the progress of the trial. The record discloses no improper conduct and in the opinion of the majority of the court there was not sufficient evidence to warrant the submission of the case to the jury.

The motion that the verdict be directed for the defendant should have been granted. It is unnecessary to consider the other questions argued by the defendant.

*Judgment for the defendant.*