JOSEPH A. MURPHY *vs.* FRANCES MURPHY & another.

Suffolk.   December 13, 1922. — February 28, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Adultery. Evidence,* Circumstantial.

Upon exceptions, alleged by a co-respondent named in a libel for divorce on the ground of adultery in which the wife was libellee, to the ordering of a decree *nisi* on the ground alleged, it appeared that at the hearing there was evidence, in part controverted, tending to show that previous to the marriage the relations of the libellee and the co-respondent had been intimate and friendly; that after the marriage these relations continued and that he visited her at different places where she was living, those visits always being made in the daytime when the husband was away from home and at times when no one else was present and

without the knowledge of the husband; that the husband did not know the co-respondent even by sight until after he had separated from the libellee; that at one time a friend of the family had seen the co-respondent sitting in the bedroom in the libellee's apartment in his shirt sleeves, on which occasion the co-respondent "dropped his head" and the libellee "was dressed very loosely in a kimono, open quite a bit down in front, and . . . as she strided along you could see her limbs as the kimono would open;" that she did not then introduce the co-respondent to the witness, but took the witness by the arm and asked him to say nothing about it. *Held,* that, upon all the evidence, including the natural inferences that properly could be drawn therefrom, a finding of adultery between the libellee and the co-respondent was warranted, and that the co-respondent's exceptions must be overruled.

LIBEL, filed in the Superior Court on August 1, 1921, and afterwards amended, for divorce on the ground of adultery with Edward E. Rose.

In the Superior Court, the libel was heard by *Callahan,* J., both the libellee and the co-respondent contesting. Material evidence is described in the opinion. At the close of the evidence, the co-respondent requested a ruling that no evidence competent against him warranted a finding of adultery on his part. The ruling was refused. A decree *nisi* was ordered; and the co-respondent alleged exceptions.

*J. E. Hannigan,* (*M. Tobey* with him,) for the co-respondent.

*F. P. Garland,* for the libellant.

CROSBY, J. This is a libel for divorce on the ground of adultery with the co-respondent Edward E. Rose; a decree *nisi* was ordered in favor of the libellant. At the close of the evidence Rose requested the trial judge to rule that there was no evidence competent against him to warrant a finding that he was guilty of adultery; the judge refused so to rule, and Rose excepted.

The libellant was married to the libellee in November, 1918; thereafter they lived together in Cambridge, and on Chiswick Road, Brighton, and on Commonwealth Avenue, Brighton. He testified that he saw a man, whom he afterwards recognized as Rose, leaving his (the libellant's) apartment on the fourth floor one afternoon in April, 1920, at about four o'clock; that during the latter part of June, 1920, about half past three in the afternoon, he saw Rose coming down from the fourth floor as he was going up; that when he went into the apartment he had a talk with his wife; that she had on a chemise, a kimono and slippers; that in consequence of a talk he had with her on July 5, 1921, she left the

house, and the next day he went to live with his father and has not since lived with his wife.

There was testimony that Rose had visited the libellee at different apartments where she was living, before her marriage; that she first met him in 1916; that he saw her at a hotel in New York in the spring of 1918; that she was with him in Washington in 1918 before she was married. The judge admitted the foregoing evidence for the sole purpose of showing their relationship, but ruled that it was not to be received as evidence bearing upon the question of her alleged adultery, and that it would not be so considered.

The libellee testified that after her marriage Rose called to see her at her apartment on Chiswick Road three or four times when there was no one else present; that while she lived on Commonwealth Avenue he came to see her five or six times, and that no one else was present; that he was there on an afternoon when one Driscoll called; that her husband was never at home on these occasions; that Rose called three times to ask her to arrange dinner parties and meet friends of his from Montreal and invited her to join them, but that she refused to do so; "that he asked her if she knew of somebody that would do, and she gave him the telephone number;" that he also asked her to arrange a dinner party for some friends from England whom he wanted her to entertain; "that she did not arrange that party for his friends from England, she could not, because Mr. Murphy was getting—he was questioning her about different things; that the only time she arranged any parties for Rose was when she gave him the telephone number."

Catherine Murray, called by the libellant, testified that she worked for the libellee during the months of May, June and July of 1919; that a man, whom she recognized as Rose, came there three times — once in May, once in June and the last time in July; that the first time she saw him he was sitting in the dining room talking with the libellee who was on the other side of his chair.

Lucy Bacchus testified that she worked for the libellee in April, 1921, at Commonwealth Avenue; that she saw Rose there during that month; that he came to the apartment and said that he wanted to see Mrs. Murphy; that she told him the latter was out; that he wanted to come in and wait and the witness refused to allow him to do so.

John F. Driscoll testified that he had dinner with the Murphys in April, 1921; that on the afternoon of the next day he went to their apartment for the purpose of obtaining his brief case which he had left there the night before; that he rang the bell downstairs and not getting any response, went up to the fourth floor and knocked on the door of the apartment; that no one answered and he knocked again and Mrs. Murphy came to the door and said "Who is there?"; that he told her and she opened the door; that he followed her toward the room where the brief case was, and in passing a bedroom he looked in and saw Rose sitting there in his shirt sleeves; that he (Driscoll) looked at him and Rose "dropped his head;" that the witness turned back and went to the outside door and Mrs. Murphy brought the brief case; that she "was dressed very loosely in a kimono, open quite a bit down in front, and . . . as she strided along you could see her limbs as the kimono would open." He further testified that she did not introduce him to Rose; that she took him by the arm and asked him not to say anything about it.

Rose testified that he had known the libellee since 1917; that he became acquainted with her at a cafe in Boston; that he saw her occasionally thereafter at apartments where she was living in different places, but that he never saw her when she was living on Chiswick Road or on Commonwealth Avenue and did not at any time or place commit adultery with her.

As was said by Colt, J., in *Thayer* v. *Thayer*, 101 Mass. 111, at page 113: "The evidence by which the act of adultery is proved is seldom direct. The natural secrecy of the act makes it ordinarily impossible to prove it, except by circumstantial evidence." In addition to the facts proved, the trial judge was entitled to draw reasonable and proper inferences therefrom. The evidence warranted a finding that the parties had ample opportunity to commit adultery, although standing alone that would not be sufficient to justify the inference that they were guilty. It could have been found that Rose had visited the libellee at her apartment on different occasions from 1917 up to the time of her marriage, and that their relations had been intimate and friendly; that after her marriage these relations continued and that he visited her at different places where she was living; that his visits were, so far as the evidence shows, always made in the daytime when her

husband was away from home, and at times when no one else was present, and were made without his knowledge; that he did not know Rose even by sight until after he and his wife separated on July 5, 1921. It also could have been found that in April, 1921, Rose was sitting in the bedroom of her apartment in his shirt sleeves and that she was present so scantily attired that her lower limbs showed as she walked; that she asked Driscoll, a friend of the family, not to say anything about what he had seen. The judge could have disbelieved the testimony of Rose that he was not there and never visited the libellee after her marriage; and could have found that her explanation for the presence of Rose in her bedroom on this occasion was not true, that she had committed adultery with him, and tried to conceal it from her husband by asking Driscoll not to mention what he had observed. Evidence of the former relations and familiarities between the parties was admissible to corroborate the other evidence tending to show the commission of the act of adultery in April, 1921. *Commonwealth* v. *Jackson*, 132 Mass. 16, 19.

Upon all the evidence, including the rational inferences which could properly be drawn therefrom, we are unable to say that the finding of the judge was erroneous. *Thayer* v. *Thayer, supra. Commonwealth* v. *Bowers*, 121 Mass. 45. *Commonwealth* v. *Clifford*, 145 Mass. 97. *Negus* v. *Foote*, 228 Mass. 375. *State* v. *Schaedler*, 116 Iowa, 488. *State* v. *Leek*, 152 Iowa, 12.

The case of *White* v. *Ely*, 234 Mass. 221, is distinguishable in its facts from those in the case at bar. As the finding of the trial judge was not without evidence to support it, the entry must be

*Exceptions overruled.*