CHARLES H. ADKINS *v.* OLA B. ADKINS.

(*March 4, 1937.*)

LAYTON, C. J., sitting.

*Tunnell and Tunnell* for petitioner.

Superior Court for Sussex County, No. 38, October Term, 1936.

LAYTON, C. J., delivering the opinion of the Court:

The burden of proof was upon the petitioner, and all uncertainties of fact must be resolved against him. *Keezer, Marriage & Divorce* (2d Ed.), § 242. Satisfactory proof of the charge must be made although the defendant is indifferent, or does not defend. *Keezer, supra*, § 510; *Peretti v. Peretti*, 165 *Cal.* 717, 134 *P.* 322; *Johnson v. Johnson*, 122 *Ark.* 276, 182 *S. W.* 897; *Topfer v. Topfer* (*N. J. Ch.*), 68 *A.* 1071.

However singular it may appear that an innocent woman does not defend against an accusation of adultery, the mere failure to do so is not a fact from which an inference of guilt may be drawn, especially where, as here, there is no evidence whatever that the defendant had actual notice of the ground alleged. The service was by publication. The notice sent to the defendant by registered mail was silent as to the cause for divorce.

The evidence is wholly circumstantial. Where circumstantial evidence is relied upon to prove adultery, two elements are necessary, opportunity to commit the offense, and adulterous dispositions or inclinations of the defendant and the alleged *particeps criminis*. 2 *Schouler, Marriage, Divorce* (2d Ed), § 1567; 19 *C. J.* 139; 9 *R. C. L.* 331; *Hartshorn v. Hartshorn*, 67 *Okl.* 45, 168 *P.* 822; *Burke v.*

*Burke,* 44 *Kan.* 307, 24 *P.* 466, 21 *Am. St. Rep.* 283; *Osborne v. Osborne,* 44 *N. J. Eq.* 257, 9 *A.* 698, 10 *A.* 107, 14 *A.* 217, 218; *Conger v. Conger,* 82 *N. Y.* 603; *White v. Ely,* 234 *Mass.* 221, 125 *N. E.* 174.

The petitioner does not minimize the force of the rule; but his contention is that the "continuous seeking of opportunities for adultery under extremely suspicious circumstances may fully satisfy the requirements of the law," and he asserts that the circumstances here presented have fully satisfied the requirement of evidence of inclination. 9 *R. C. L.* 331 is offered as authority that, "it must be shown that the parties were together under suspicious circumstances not readily susceptible of explanation except on the assumption of corrupt design." In support of the text, *Burke v. Burke, supra,* is cited, and that case cites *Mayer v. Mayer,* 21 *N. J. Eq.* 246. But neither of the cases supports the contention that opportunity alone is such a suspicious circumstance from which a corrupt design is to be assumed. The cases are to the contrary. In the first case, the Supreme Court of Kansas reversed a judgment of the district court granting a decree for divorce where the finding of adultery on the part of the wife was based wholly on inferences from the fact of opportunity, and the opinion especially noted that there was no evidence of kisses, embraces or undue familiarities between the defendant and the alleged corespondent, nor of letters passing between them. In the second case, the Chancellor refused a decree saying that it was "not sufficient to convict parties who may be supposed willing to commit adultery, to prove that they were in a position that it was possible to commit it." He, as in the *Burke Case,* called attention to the fact that nothing wanton or lascivious, or approaching to it, was shown in act or conversation.

The petitioner relies upon testimony showing that on the occasion of a visit to the defendant's home by a neigh-

bor, the screen door giving access to the porch or kitchen was fastened or hooked, and that the infant children of the defendant were seen trying to open the door of a chicken house where the defendant and her alleged paramour were.

A statement appearing in 4 *Ency. Evidence,* 759, is cited, that "frequent visits between the guilty parties, especially in the absence of the spouse, raise a strong presumption of adulterous desire." The cases cited do not sustain the broad implication of the text. In *Daily v. Daily,* 64 *Ill.* 329, the evidence was that the husband had sometimes been alone with a woman generally reputed unchaste in a room with the doors locked, and all entrances to the house barred; that he paid her money, frequently met her at an eating house, and often rode with her. In *Beeler v. Beeler,* 44 *S. W.* 136, 137, 19 *Ky. Law Rep.* 1936, there were frequent visits in the absence of the husband, but there was testimony given by the corespondent himself, and the charge of adultery was, as the court said, "abundantly established by the testimony of other witnesses." In *Patterson v. Patterson* (*N. J. Ch.*), 20 *A.* 347, there was, in addition to frequent visits in the husband's absence, evidence of embraces, kissing and licentious actions between the wife and the corespondent. In *Dunn v. Dunn* (*N. J. Ch.*), 21 *A.* 466, there was evidence of frequent visits by the corespondent, but in addition, evidence of kissing and embracing, and occupancy by the defendant and corespondent of the same home during the pendency of the suit. In *McGrail v. McGrail,* 48 *N. J. Eq.* 532, 22 *A.* 582, the defendant was found at night in her bedroom with the corespondent. In *Stickle v. Stickle,* 48 *N. J. Eq.* 336, 22 *A.* 60, in addition to visits of the corespondent in the absence of the husband, there were found many letters evidencing a guilty attachment.

The petitioner cites also a statement appearing in 9

*A. & E. Ency. Law* (*2d Ed.*) 753, to the effect that while a sufficient opportunity is not shown by mere proof that the suspected parties were alone in a room the doors of which were not locked, yet if the doors were locked, the conduct of the parties, in such circumstances, is incompatible with innocence, and adultery will be inferred. Again the text of the authority is not sustained by the cases cited to support it. *Daily v. Daily, supra,* has been noticed. In *Wilson v. Wilson,* 154 *Mass.* 194, 28 *N. E.* 167, 12 *L. R. A.* 524, 26 *Am. St. Rep.* 237, the petitioner burst open the door of a hotel room and found his wife in bed with her paramour. In *Jayne v. Jayne,* 5 *Misc.* 307, 25 *N. Y. S.* 810, the evidence was that the defendant's wife established the corespondent in business; that she left the door between his bedroom and hers unfastened, while she bolted the door opening into her husband's bedroom; and that she had written a letter evidencing an adulterous disposition. In *Smith v. Smith* (*Com. Pl.*), 13 *N. Y. S.* 817, 820, the defendant engaged rooms for herself and the corespondent representing herself as his wife, and frequently remained in the room with him with the doors closed and locked. She was seen undressed in the room with him, and there was a letter from the corespondent to the defendant, saying "There can be no resuming the past life you and I have had, at least not now," and, "If we meet again, the same leaping heart and passionate love (and all that this implies) will greet you."

In *Black v. Black,* 30 *N. J. Eq.* 228, letters of the defendant to her lovers were in evidence, presenting, as the court said, "a sad picture of moral degradation. They accuse her of lascivious love, of stolen interviews and clandestine correspondence."

Here the evidence disclosed one occasion when a screen door, presumably at the rear of the house was hooked or fastened. There was no evidence that other entrances to the

house were barred. The visitor's purpose, on this occasion, was not to make a social call, but to give to the defendant "scraps for the pigs." Yet, she was let into the house, and that without delay so far as the evidence shows. There was no evidence that the defendant and the corespondent, or either of them, showed embarrassment, or signs of guilt in their faces or persons.

Light screen doors, such as are generally used in the summer, are frequently equipped only with a hook to keep them shut, and it is not unusual for such doors to be kept hooked.

The evidence that the defendant and the corespondent frequently were in the chicken house together, and that the defendant's small children, one about two years, the other between three and four years old, were unable to open the door, is not of great significance. The testimony was that "baby chicks" were being raised, and that they were running about the floor. Naturally the door would be closed. There is nothing in the evidence to indicate whether the door knob or latch was in reach of the children, or whether the door was easy or hard to open. There was no clear testimony that it was not possible to see into the chicken house through its windows; and why the defendant and her alleged paramour, in open day, should select the chicken house for their supposed adulterous practices when the dwelling house was available, is a question not easily answered. The visits of the corespondent to the defendant were frequent, and were in the absence of the husband, but they were made openly in the light of day, and not secretly. From the testimony it appears that the husband's absences from home were of uncertain duration. He might have returned at any minute to find the defendant and the corespondent in a compromising situation, but as to this there was no evidence.

Adultery may, of course, be proved by circumstan-

tial evidence. Direct evidence, in most cases, is unattainable; but where guilt is to be inferred from circumstances, the sufficiency of proof is to be found in a preponderance of inferential evidence which, weighing the presumption of innocence in favor of the defendant, would lead the guarded discretion of a reasonable and just mind to the conclusion of guilt; and such conclusion should not be the result of a rash judgment, founded on appearances that are equally capable of two interpretations.

The fallacy of the petitioner's argument, that "the continuous seeking for opportunities for adultery under extremely suspicious circumstances," satisfies the rule of sufficiency of evidence, is that it begs the question. It assumes a proposition which in reality, involves the conclusion.

To infer guilt from the fact of opportunity alone, it is necessary either to say that "opportunity is tantamount to guilt, or that a decree may rest upon a crime half proven, even though the half it rests upon is the half that is not proven." *Osborne v. Osborne, supra.*

There was ample evidence of opportunity for sexual intercourse between the defendant and the corespondent, but there was not the slightest showing of criminal desire, usually evidenced by kissing, embracing, lewd behavior or speech, or by compromising situations or letters. The defendant was highly indiscreet. The circumstances in which she and the corespondent so frequently met were suspicious. More is required to prove adultery. *Emory v. Emory,* 1 *W. W. Harr.* (31 *Del.*) 106, 111 *A.* 540.

Decree nisi refused.