94 A.2d 603 (1953)
CRAWFORD
v.
STATE.
Supreme Court of Delaware.
February 6, 1953.
*604 Everett F. Warrington, of Georgetown, for plaintiff in error.
John J. McNeilly, Deputy Atty. Gen., for the State.
SOUTHERLAND, Chief Justice, and WOLCOTT and TUNNELL, Justices, sitting.
TUNNELL, Justice.
On the 21st day of April, 1952, in the Sussex County Superior Court, a jury found Charles William Crawford (hereinafter referred to as "Crawford" or simply as "defendant"), and two codefendants, George Washington Moore and Elwood Willin, respectively, guilty of the crime of robbery as defined by Para. 5176, Revised Code of Delaware, 1935. A motion for a new trial having been made, considered and denied, all three defendants were sentenced to pay fines and serve terms of imprisonment. The defendants had been represented by counsel at the trial, but on the 8th day of July, 1952, the trial court, presumably at Crawford's request, appointed Mr. Warrington to advise and aid him in the matter of an appeal. An appeal was in due course taken, and the matter, having been regularly briefed, came on for argument on January 16, 1953, at a session of this court especially called for the case.

Motion To Dismiss
On the appointed day, the deputy attorney-general, in the course of his oral argument, advised the court that on the 1st day of December 1952, defendant had escaped from the Sussex County Prison and had fled to the State of Maryland, where, having been apprehended, he had resisted in the courts, and was then still resisting, all efforts of the Delaware authorities to have him extradited. Thereupon, this court gave the State an opportunity to file a formal motion to dismiss this appeal, gave both parties an opportunity to file affidavits properly introducing into the record the new situation thus brought informally to the court's attention, and fixed a schedule of briefs relating to the dismissal question.
No formal motion was ever in fact filed in accordance with Rule 19 of this court or with the court's oral direction at the time of argument. Affidavits were sent to the Clerk, however, and briefs were submitted by both parties as if a motion had actually been filed, so we here follow the example of counsel and overlook the procedural irregularity. We pause to state, however, that we are prompted to do so largely because we consider that the entire problem as to the application to dismiss is settled by the defendant's most recent action.
Promptly after the argument, and before the day appointed for the filing of the first brief in support of the motion, the defendant dismissed his then pending Maryland appeal as to extradition. He thereupon surrendered himself to the Delaware authorities, and affidavits show that he was back in the Sussex County Prison on January 19th, three days after the argument in this court. The State, however, still presses for dismissal.
There can be no doubt of the general principle that a fugitive from justice, while he remains a fugitive, has no right to the appellate procedures provided for those who rely upon the orderly course of justice. 2 Am.Jur., p. 988; 24 C.J.S., Criminal Law, § 1668, p. 266. Mr. Chief Justice Waite said, in Smith v. U. S., 94 U.S. 97, 24 L.Ed. 32:
"It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render. * * * If we affirm the judgment he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case."
If this defendant had remained a fugitive, we should unhesitatingly exercise our discretion to dismiss the instant appeal. But before the question of dismissal vel non could even be taken under advisement, defendant put himself where he must submit to the judgment of the court. Under these circumstances, therefore, we exercise our *605 discretion to deny the motion to dismiss and to consider defendant's appeal on its merits.

The Merits Of The Appeal
Defendant alleges no error of law prior to the submission of his case to the jury, resting his appeal entirely upon a claim that the evidence against him was not sufficient to sustain a conviction. We must, therefore, consider the testimony in some detail.
On the 23rd day of October, 1951, between 6 o'clock and 6:10, p.m., two masked men and one unmasked man held up a Mr. Edward G. P. Jones at gunpoint and robbed him of some checks and money. Jones was the proprietor of a liquor package store called the "Red Top Tavern", situated in Delaware on the highway leading from Laurel, Delaware, to Sharptown, Maryland. The robbery was committed on the Tavern premises.
The prosecution introduced evidence tending to prove that on October 23, 1951, Crawford had owned a 1940 Chrysler sedan; that between 4:30 and 4:45 on that afternoon a car identified as Crawford's, in which four men were then riding, had stopped in Sharptown, Maryland, while the occupants of the car inquired directions to the home of Clarence Willin, a brother of one of the codefendants; that two of the four men occupying Crawford's car at that time and place were the codefendants Moore and Willin; that shortly after five o'clock of the same afternoon all three defendants went to a garage in Sharptown, where they explained to the man in charge that they were having trouble to get their car, which they described as a 1940 Chrysler, into gear, but before the garageman did anything to the car, and without his even seeing it, some person whose identity was unknown to the garageman, had been able to get the car going, so that a mechanic's services were no longer wanted; that Sharptown, Maryland, is about 1.2 miles from the Red Top Tavern; that at about 5:30 o'clock in the same afternoon an old model sedan of one of the Chrysler makes had been parked for twenty minutes or half an hour down the road within sight of the Red Top Tavern, and then, between 6:00 and 6:10, had transported to the Tavern the three men who had perpetrated the robbery; that the car in which the robbers rode had these characteristics in common with defendant's car: manufacture by the Chrysler Motor Company several years ago, Maryland temporary tags, certain spots on the rear bumper looking like paint spots, a left rear fender dented much as the one on Crawford's car was dented, an amber radiator ornament in the shape of a man, and, mounted on the right rear wheel, a Sears, Roebuck tire of a pattern long ago discontinued and now infrequently found in use; that tracks corresponding to the heels on the shoes of Moore and Willin, respectively, in whose company the defendant had been seen, as before mentioned, about five o'clock, were found near the Red Top Tavern beside the place where the defendant's car had been parked; that the defendant Moore, one of Crawford's recent companions, was the unmasked robber; that after the robbery the three perpetrators had driven off in the direction of Sharptown; that at 8:50, p.m., defendant had been stopped by a highway policeman at Wye Mills, Maryland; that at the time he was so stopped he was driving his car on Maryland Route 404, from the direction of Denton, which was between the Red Top Tavern and Wye Mills, about sixty miles from the Red Top Tavern; that when asked by the officer where he had been, he had replied "Federicksburg", and when the officer asked if he had meant to say "Federalsburg", he had assented; that at about nine o'clock in the evening of that day the defendants Moore and Willin were apprehended in the said town of Federalsburg; that Federalsburg is about fourteen or fifteen miles from the Red Top Tavern; that after defendant was thus stopped by a policeman for a traffic violation, he showed indications of intoxication, being what the trooper called a "border line" case, so that defendant was not arrested for driving drunk, but was merely required to pull off the road and sleep a while; and that when defendant attempted so to pull his car off the road at the officer's direction at Wye Mills, its gear shifting apparatus had given such *606 difficulty that he had actually broken off the gear shift lever.
Defendant, in his own behalf, on the other hand, testified that he had used his car, a 1940 Chrysler, on October 23rd, to drive one Tedder, a friend of his, from defendant's home city, Baltimore, to Philadelphia, Pa.; that he had started drinking in the morning of that day and had kept up the drinking all day until about four o'clock in the afternoon, when he became very sleepy; that his friend, at about that hour, in Philadelphia, had taken the wheel of defendant's car and started driving it; that defendant, as soon as Tedder started to drive, had gone to sleep on the back seat of his car, with Tedder as his only companion; that he had remained asleep until he reached Wye Mills, Maryland; that promptly upon awakening he had taken the wheel of his car, inquired at a filling station and learned his whereabouts; that almost at once, while still in the vicinity of Wye Mills, he had been stopped by the police for failing to stop at a "stop" street; that he had never seen either of the codefendants, Moore or Willin, until the 26th day of October, 1951, when he had met them at the Denton Jail; that neither Moore nor Willin had ever ridden in defendant's car; that he had never in his life been in either Sharptown or Federalsburg; and that he neither robbed the prosecuting witness as alleged nor was in the company of anybody else who did so.
Also, as a part of the case for the defendants, the two codefendants testified that while it was true that they had been in Sharptown on October 23rd, riding in a Plymouth car which looked like Crawford's Chrysler, and had visited the garage spoken of by a witness for the State, they were never at any time in the car of defendant Crawford, and one of them testified that he had never in his life seen Crawford until after all the defendants were arrested.
The evidence against defendant is circumstantial, to be sure, as must be so in many cases of robbery by masked men, and the items of proof are few, but the mere recital of what there was illuminates its legal sufficiency. The difficulty, if there was difficulty, fell upon the jury.
In defendant's behalf it has been argued that either of two special defences is reconcilable with the State's case in such a fashion as to preclude the possibility of conviction on evidence which is no more than circumstantial: (1), alibi, and (2), that defendant was at the time of the crime either intoxicated or in a deep sleep brought on by alcohol. Defendant's third argument is that there was no sufficient proof of his actual participation in the crime, even though he be conceded, arguendo, to have been at the scene of the crime, being both wide awake and sober at the time.
As to alibi, the jury could certainly believe, and, in view of the verdict, probably did believe, that about one hour before the crime was committed defendant Crawford, a Baltimore man, had been in Sharptown in the company of two men who later participated in this robbery. They may have believed that the automobile which was at the scene of the robbery and was used for the crime was Crawford's, and they may have accepted as truth just this much of Crawford's own testimony, that he accompanied his car all that day. Those facts, taken together and believed, as it was within the clear prerogative of the jury to do, would destroy the alibi.
The attempt to prevail in an appellate court on the theory of drunkenness, or a sleepy stupor brought on by drunkenness, is even less troublesome. Nobody, not even the defendant, introduced any evidence indicating a degree of intoxication which would raise a question as to his criminal responsibility. Indeed, the positive testimony of defendant that the other defendants were not in his car on the 23rd of October, and that nobody in his company committed a robbery as alleged, may have been considered by the jury to preclude defendant from claiming that he did not know where he was or who was with him from 4 o'clock on the afternoon of the 23rd until just prior to 8:50 that night. His appearance and demeanor after 5 o'clock in Sharptown elicited no voluntary comment from the garage proprietor who testified that he observed defendant at the garage at that time, seeking to have the car repaired, and the garageman was *607 neither examined nor cross-examined as to defendant's condition.
The defendant, of course, bore the burden of proving his incapacity to commit a crime. In this instance there was a complete failure to prove drunkenness, and the testimony that he was asleep, apparently contradicted by the defendant himself, was in any case controverted by another.
Finally, we must consider the legal sufficiency of the circumstantial evidence of defendant's actual participation in the robbery. The jury may have found as a fact upon the evidence that defendant, a Baltimore man, was at Sharptown, Maryland, within two miles of the scene of the crime, in the company of two of the robbers, an hour before the crime was committed, and may have attached significance to the defendant's denial under oath that he had ever in his life been at that place or had ever known or been in the company of either of those men. They may have found that after five o'clock he was wide awake and engaged in trying to have his car fixed, holding against defendant his false testimony that he was in sound, uninterrupted sleep from four o'clock in Philadelphia until 8:50 at Wye Mills. They may have believed on the evidence that he furnished the car used for the robbery, and may have attached significance to his denial that his car was or could have been the one used. They may have believed his testimony that he accompanied his car all that day and evening, rejecting such of his testimony as they did not believe. They may have found that he did admit to the officer, upon being stopped on the night of the 23rd for a traffic violation, that he had just come from Federalsburg, fourteen or fifteen miles from the scene of the crime, and may have attached significance to his denial at the trial that he had, in fact, been in Federalsburg, the jury also perhaps believing it of circumstantial importance that Federalsburg is the very place where the other two defendants were picked up by the police about ten minutes after Crawford was thus interrogated at Wye Mills.
If the jury found such facts and found untrue the defendant's several denials thereof, those denials would be significant circumstances proper for the jury's consideration. Such a sequence of fabrications would certainly raise the inference that defendant believed that the truth was too damaging to tell. Mr. Chief Justice Fuller, in Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 898, 40 L.Ed. 1090, expressed the point this way:
"Nor can there be any question that, if the jury were satisfied, from the evidence, that false statements in the case were made by defendant, or on his behalf, at his instigation, they had the right, not only to take such statements into consideration, in connection with all the other circumstances of the case, in determining whether or not defendant's conduct had been satisfactorily explained by him upon the theory of his innocence, but also to regard false statements in explanation or defense, made or procured to be made, as in themselves tending to show guilt."
See also 20 Am.Jur., p. 220.
If the jury did so find and so reason, it is easy to see how they were unable to reconcile any theory of the defence with what they found to be the facts of the case, and on the other hand, were able to reconcile with those facts, and particularly with defendant's numerous false statements in regard to them, only the theory of the State that the third participant in the robbery must have been Crawford.
We find that the evidence in the record is in law sufficient to support the defendant's conviction. We must, therefore, affirm the judgment of the Superior Court.