**HUSBAND, Plaintiff Below, Appellant,**

v.

**WIFE, Defendant Below, Appellee.**

Supreme Court of Delaware.

July 29, 1968.

For decision on appeal after remand, see 253 A.2d 67.

James M. Tunnell, Jr., Andrew B. Kirkpatrick, Jr., and Richard L. Sutton, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff below, appellant.

Vincent A. Theisen, of Theisen & Lank, Wilmington, for defendant below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

The husband has filed this appeal from an order of the Superior Court denying his petition for divorce. The petition alleged two grounds, adultery and desertion, which were denied by the wife. She also filed a counterclaim for a divorce *a mensa et thoro* on the ground of desertion. The trial Judge denied both the petition and the counterclaim. The wife has not appealed.

The question we shall pass upon is whether the trial Judge erred in holding that the evidence did not support a finding of adultery committed by the wife. Because of our views upon that question, we do not consider the alternative ground of desertion. We have carefully examined the evidence and reviewed the inferences and conclusions drawn therefrom by the trial Judge, in accordance with Nardo v. Nardo, Del., 209 A.2d 905; Nelson v. Murray, Del., 211 A.2d 842; and Reynolds v. Reynolds, Del., 237 A.2d 708; we find ourselves in disagreement with the Court below as to its ultimate conclusion. Our reasons require a somewhat extended review of the evidence.

A preliminary matter should first be mentioned. Appellant takes the view that the trial Judge resolved the disputed testimony and found the facts in his favor, but held them insufficient to justify a finding of adultery. Appellee, on the other hand, argues that the Judge simply assumed the truth of appellant's evidence on that issue, as on a motion to dismiss, and held it insufficient. We think that appellant's view is undoubtedly correct, because the decision was not made until all the evidence for both parties had been taken, rather than at the end of plaintiff's case in chief; because the Judge stated that he would deny the decree instead of saying that the petition would be dismissed; because his summary of the evidence is couched in language which indicates an actual determination of fact; and, finally, because of the various discrepancies in the wife's own testimony hereafter set forth. In most instances, it is important for our purposes that the record clearly show whether the trial Court has merely assumed the truth of a party's evidence or has made an actual finding of fact; for this reason, the record ought to indicate definitely and clearly in some manner which approach has been taken. In the present case, however, we see no need to have the record clarified on the point because we think the evidence as a whole justifies only the conclusion that the trial Judge found the facts in the husband's favor. We do not disturb the findings.

The husband is a native of the United States and the wife is a native of France. She has three children by a former marriage. They were married in Paris in 1962, after knowing each other about five months. Thereafter, they lived in New Castle County until their separation in 1966.

In 1964, over the husband's objection, the wife went to Europe by boat, traveling alone. When she returned several weeks later, in contrast to her former attitude towards her husband, she was cool and indifferent to his advances, and finally told him that she had fallen in love with another passenger on the ship. At various times thereafter, she referred to this passenger, whom we will call "X," as her "lover," and spoke of her relations with him on the voyage in language which, in our opinion, can only be reasonably understood as meaning that they had sexual relations on the ship. Although she did not reveal his name, she did from time to time make remarks about his size, his marital status, his employment, and his national origin. On a few occasions, she boasted of X's prowess as a lover. She also spoke of having later met X in a hotel in this country, and stated that she had spent time with him on each occasion that he had visited this country since they met on the ship.[1]

---

1. X lived in another country but visited the United States fairly often in connection with his employment.

The foregoing constitutes the gist of the husband's testimony of her admissions to him; if it be true, she of course committed adultery. On the other hand, her testimony was a complete denial of any such conversations. She flatly denied committing adultery with any man, and stated that the only person she had ever mentioned as a "lover" was a man whom she had known in France and had given up prior to this marriage, and who was not X. She also denied knowing anything whatever about X.

If this constituted all the evidence in this case, we would be obliged to affirm the decision of the Superior Court, even if the husband's testimony were accepted as true, because of 13 Del.C. § 1504, which provides that no decree for divorce shall be granted unless the cause is shown by affirmative proof aside from any admissions on the part of the defendant. The husband, however, presented additional evidence which, although circumstantial, not only corroborates the substance of the alleged admissions, but also supports his testimony that the admissions were made.

The parties took a trip to California in 1965. The husband says that she had by that time refused to have any further sexual relations with him and that he planned the trip in the hope that it might bring about a reconciliation of their differences, although that hope was not realized. In their room at a hotel in San Francisco, there was a brochure showing pictures of prominent persons who had visited the hotel, with their names and a short description of their backgrounds. Shortly after the parties left San Francisco, the wife remarked that she had seen a picture of her "lover" in the hotel room. The husband later obtained a copy of the brochure from the hotel, and found in it the picture of the person named X, together with comments about his occupation, family, and nationality, which agreed precisely with the information which his wife had previously given him about her "lover." Thereafter, on behalf of the husband, the records of the steam-ship line were checked; they showed that X was a passenger on the same ship which the wife took to Europe in 1964.

Certain records of R. Hotel in New York City were introduced into evidence. They showed that the wife and X were registered therein from March 23, 1965, to March 25, 1965. The hotel records also showed that the reservation for the wife had been made by wire on March 16, 1965, from a hotel in Stockholm, Sweden, although she testified that she had made it by a telephone call from Wilmington on that date. Records of the hotel in Stockholm showed that X was staying there from March 14 through March 18, 1965.

The records of R. Hotel in New York also showed that the wife and X were registered therein December 5 and 6, 1965.

The records of G. Hotel in Washington, D. C., showed that the two were registered there at the same time in September, 1966.

The wife's testimony concerning these "coincidences" contains many discrepancies. In her pre-trial deposition, she testified that the only hotels in New York City where she had ever stayed were the S. and H. Hotels. A few days after that deposition was taken, the complaint in this case was amended and for the first time, the name of R. Hotel was brought into the case. She thereupon, through her attorney, informed appellant's counsel that she had, in giving her deposition testimony, overlooked the fact that she had stayed at the R. Hotel on several occasions.

Again in her deposition she stated that she never visited New York to see her daughter, who was living in Washington in 1965. At the trial, however, she testified that in December, 1965, her daughter was going to New York to do some Christmas shopping and asked her mother to meet her there; that she did so on December 5; that after walking around with her daughter, she became tired and decided to stay in New York all night, whereupon she checked into the R. Hotel and the daughter caught

a train to Washington.[2] Her testimony clearly implies that she had no intention of staying all night when she went to New York; yet the hotel records show that her reservation was made by her by telephone a week earlier.

Again in the deposition, the wife testified that she did not go to Washington in September, 1966, having no reason to do so since her daughter was then living in Mexico. She also stated that she had never stayed at the G. Hotel except with her husband. At the trial, however, she recalled her visit there in 1966, giving as a reason for the visit the statement that she was lonely for her daughter and felt that a trip to that city and to the various places which she had previously visited with her daughter might help to dispel her loneliness. Of course, the husband was not in Washington at the time.

It was further shown that the wife, without the husband's knowledge, rented a mailbox at the local post office, separate from the one which she and her husband had been jointly using. She says she did this because their butler was careless in handling the mail. It was clearly proven, however, that the butler did not commence to work for the couple until some weeks after she rented the separate box.

It was also shown that X's employer, a large banking corporation, maintained a rather large apartment in New York City for the use of its representatives. It was available to X. We have no explanation as to why he stayed in a hotel rather than in this apartment during the two trips in 1965. X died some months before the trial; his deposition was never taken.

We fully understand that the wife is not expert in the use of the English language, and at times had to have assistance from an interpreter who was present during both the deposition and the trial. This fact cannot explain the discrepancies we have pointed out; they are not the result of language difficulties. We cannot believe that the four episodes of the wife and X being on the same ship and the same hotels in less than two years, as shown by incontrovertible evidence, were mere coincidences. In our opinion, the only reasonable explanation is that they met on board the ship and thereafter deliberately planned the other occasions.

■ The patent falsity of the wife's testimony tends to show guilt on her part and to corroborate the charge. Crawford v. State, 8 Terry 552, 94 A.2d 603; Coven v. Coven, 64 N.J.Super. 6, 165 A.2d 200. The perjury impels acceptance of the husband's testimony concerning her admissions. We accordingly have a situation in which the indisputable circumstantial evidence corroborates the husband's testimony, which in turn corroborates the circumstantial evidence. Certainly the demands of 13 Del.C. § 1504 have been met. The case differs vastly from DuPont v. DuPont, Del.Super., 7 Terry 280, 90 A.2d 467, 468, in which the evidence of fraud consisted almost solely of admissions by the defendant. In this connection, we again point out that the purpose for requiring affirmative proof aside from admissions of a defendant is to prevent collusion, wherefore less corroboration is needed in a case, as here, in which there is a *bona fide* contest. Reynolds v. Reynolds, Del., 237 A.2d 708.

■ Some argument is made concerning the application of the circumstantial evidence rule to this case. Assuming that the rule applies, we are fully satisfied that it has been met, in that the circumstantial evidence supports but one reasonable hypothesis: guilty of adultery. As the trial Judge indicated, the case of Adkins v. Adkins, 8 W.W.Harr. 314, 190 A. 740, and Emory v. Emory, Del.Super., 1 W.W.Harr. 106, 111 A. 540, on which the wife relies, were instances where the evidence of adultery was wholly circumstantial and at most showed opportunity for adultery with no

---

2. The record contains no testimony from the daughter.

proof whatever of adulterous disposition. Here both have been shown to exist. The husband's proofs fully meet the requirements of the "preponderance of the evidence" rule applicable to divorce cases. See Wharton v. Wharton, Del., 226 A.2d 824.

For these reasons, we disagree with the inferences and ultimate conclusion drawn by the trial Court from the facts as it found them. We are of the opinion, therefore, that a *decree nisi* should have been granted to the husband on the ground of adultery.

The judgment below will be reversed and the record remanded for the entry of such a decree.