HUSBAND, R. S. S., Plaintiff Below, Appellant,

v.

WIFE, B. J. S., Defendant Below, Appellee.

Supreme Court of Delaware.

July 8, 1971.

Joseph H. Flanzer, of Flanzer & Isaacs, Wilmington, for plaintiff below, appellant.

Daniel F. Kelleher, of Theisen, Lank & Kelleher, Wilmington, for defendant below, appellee.

WOLCOTT, Chief Justice, and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice.

The husband, plaintiff below, has appealed from the denial of a divorce decree on the ground of incompatibility. The trial Court found that there were disagreements between the parties, but that these difficulties, appear trivial. It further found the marriage may be difficult but not impossible to repair. The appellant contends that these conclusions are not justified by the testimony.

■ Our divorce statute, 13 Del.C. § 1522(12), defines incompatibility. The marriage must be characterized by rift or discord produced by reciprocal conflict of personalities which has destroyed the marital relationship beyond a reasonable possibility of reconciliation. It must exist two years prior to the divorce action. As we stated in J.A.D. v. P.L.D., Del.Supr., 259 A.2d 381 (1969), petty quarrels and minor bickerings are insufficient; the parties must be so mismated that their marriage has in fact ended as the result of their hopeless disagreement and discord.

■ In the present case, there is no substantial dispute concerning the basic facts relied upon by appellant. The difficulty arises because of the inferences and deductions drawn therefrom to the effect that the parties' troubles are trivial and remediable. It is our duty, therefore, to review the inferences and deductions made by the trial Court, and to draw our own inferences and deductions if we think justice so requires. Nelson v. Murray, Del.Supr., 211 A.2d 842 (1965); Husband v. Wife, Del. Supr., 253 A.2d 63 (1968).

The parties were married in 1951. Starting about 1964, when the family moved to a different residence, until their separation in September, 1969, considerable friction existed. The husband complained about the wife's failure to have meals on time—a matter of importance to the husband, a physician, because of his office schedules; he accused her of frequently having fits of temper when she would scream at both the husband and their children. During the last three years that they were living together, there were a number of serious arguments. As a result of one, the husband

left the hotel where they were then vacationing and stayed away for several hours. On another occasion, the husband was offered a free trip to Spain; when he suggested that he wanted to go, the wife became angry and left the home for several hours. After her return, the parties did not speak for two or three weeks. Later, there was a quarrel about one of the children, following which he left the family home for several weeks, during which time the wife wrote him a letter in which she spoke of their inability to communicate, the periods of silence, and the loss of his love. In January, 1969, the couple took an ocean cruise, during which an argument developed and they did not speak to each other for several days. In September, 1969, at High Holyday services, the couple were at a synagogue with the husband's parents. Because he sat between his parents and did not sit immediately next to the wife, she became very angry and made loud comments during the services to the effect that her husband was senile, that he was a "mama's boy," and that he ought to see a psychiatrist or the rabbi. After services, a violent argument ensued in public outside the synagogue and was continued outside the residence of the parties. Thereafter, the husband was at the home only to sleep and, after about three weeks, he moved out of their residence entirely. During the three-week period, there was no communication between the parties. It also appears that on frequent occasions, the wife accused her husband of being a "mama's boy." Towards the end of their life together, the husband was troubled with frequent headaches, elevated blood pressure, and constant spasms of the gastrointestinal tract. His condition improved markedly after the ultimate separation.

The wife admitted most of the occurrences mentioned above, but insisted that all of them were trivial, or that they were the kind of arguments every married couple has, or that they were soon forgotten. In her opinion the principal difficulty was that the husband could not sever the bonds which tied him to his parents; she felt that the marriage could be saved if the husband would remedy this situation. He agreed that he was obliged to see his parents more frequently than might be expected, but explained that this was necessary because of the physical condition of the parents and because he is a physician.

■ Even if the wife's opinion as to the cause of their troubles be accepted as true, it nevertheless appears to us that the evidence definitely establishes that there is a mutual and bilateral conflict of personalities, with some degree of mutual fault, sufficient to destroy a normal and wholesome marital association. Buonassisi v. Buonassisi, Del.Supr., 267 A.2d 888 (1970). If the basic cause of the rift is the husband's inability to break the parental ties, the difficulty can hardly be reasonably expected to terminate after having continued, and been the source of serious discord, for the past twenty years. Added together, we are of the opinion that the facts lead clearly to the conclusion that the trouble in this marriage is far more than "trivial" as found by the trial Court. We think that, under the facts present here, there has been shown a serious "rift or discord produced by reciprocal conflict of personalities" sufficient to warrant the conclusion that this marriage has been destroyed beyond possibility of reconciliation. J.A.D. v. P.L.D., *supra.* The ground of incompatibility has been thus made out.

In our opinion, the *decree nisi* should be granted for the reasons stated. The judgment below will accordingly be reversed and the record remanded with instructions to enter such a decree.