## THE PEOPLE v. RICHARD SLIGH.

*Assistant police justice—Depositions—Verdict of crime—Stenographer's notes of testimony—Requests for instructions—Conviction of one of several joint wrong-doers—Larceny—Accessories.*

The Police Court Act of Grand Rapids provides that in case of the "absence, inability or disability" of the police judge the assistant justice may act in his place. *Held*, that where a complaint was made before the judge and the depositions of witnesses were taken before the assistant, and the judge afterwards certified that defendants waived further examination and committed them for trial, the proceeding might be sustained, especially as a commitment may be made where examination is waived.

Witnesses in civil cases are not required by any constitutional rule to be produced in open court, and in equity the prevailing practice is against it, depositions being taken when witnesses cannot be present. But the Constitution does not permit this to be done in criminal cases.

A verdict in a criminal case cannot properly rest on a mere preponderance of conflicting evidence, but should be based on proof that leaves no reasonable doubt of guilt.

The testimony of a witness in the trial of a criminal case, may be reproduced, if necessary, upon a later trial, if the witness has meanwhile died; but it must be placed before the jury as nearly as possible as the witness would have placed it.

Stenographer's minutes of former testimony cannot be received to supply the testimony of an absent witness if they are not shown to be correct.

The refusal of specific requests to charge is not error if the charge given brings out the same points clearly and definitely.

Where defendants in a criminal case are charged as joint wrong-doers, the jury must be cautioned that the conviction of one is not to be considered in dealing with the other.

Where more than one person is concerned in the original guilty purpose of committing larceny from the person, all who are present, aiding and abetting, are principals. But one who afterwards receives the stolen property without being in anywise concerned in the original purpose, is guilty of the larceny alone.

Error to Superior Court of Grand Rapids. Submitted January 26. Decided April 5.

INFORMATION for larceny from the person. Respondent brings error. Reversed.

*S. D. Clay* and *E. S. Eggleston* for plaintiff in error.

Attorney General *Jacob J. Van Riper* for the People.

CAMPBELL, J. This case comes up on error from the Superior Court of Grand Rapids, where Sligh was convicted of larceny from the person of one Leonard Tisdale, and sentenced to imprisonment in the State prison.

He was jointly informed against with one Frank Jones, but tried separately.

A motion to quash was made on the ground that the parties charged had never had any preliminary examination, and also because the witnesses on the examination as returned by the police justice of Grand Rapids were sworn before John W. Holcomb, the assistant police justice, while the commitment was made by John M. Harris, the police justice.

The complaint appears to have been made before Harris in February, 1880. The depositions all appear to have been taken in January, 1881, before Holcomb. But on the 25th of January, 1881, Harris certified that defendants waived further examination, and he committed them for trial.

Under the Police Court Act of Grand Rapids the assistant justice is empowered to act in case of the "absence, inability, or disability" of the police justice. Pub. Acts 1879, p. 70, § 12. By section 6 of the Police Court Act, the "police court" is given exclusive jurisdiction of examinations.

There is certainly some incongruity in having one justice act on depositions taken before another, but there is also difficulty under this statute in allowing one justice to act when the other is present and capable. We are inclined to think the examination should be treated as properly conducted, although both took consecutive parts in it. But inasmuch as there was an express waiver of any further examination before the police judge himself, and inasmuch as a commitment may be made where examination is waived, the difficulty suggested does not seem to arise, and the objection cannot stand.

On the trial the prosecuting attorney proposed to prove the death of Tisdale and to show by one Isaac Dement what Tisdale swore to on a former trial, and also the statement of the respondent on that trial, and that he expected to contradict that statement by other witnesses. Respondent objected that the testimony was incompetent, and that he was entitled to be confronted with the witness in person. The objection was overruled.

Before any testimony was given, however, the witness was asked: "Will you tell this jury just what was said by Mr. Tisdale on direct and cross-examination, and the whole of it given on that trial?" To which the witness answered: "I cannot do it without I can read it from my notes taken on that trial." He was then allowed to read his stenographic notes with no further explanation.

While the authorities are very much in conflict concerning the right to prove on a second criminal trial the testimony given by a deceased witness on a former trial, and with a good many *dicta* there are not many cases where the question can be said to have been decided by authority, yet we think the prevailing opinion is that this constitutes one of the exceptions to the rule requiring witnesses in such cases to be confronted with the prisoner before the trial jury.

The exception, if justified at all, can only be maintained on the ground of necessity, and to prevent a failure of justice. The cases which sustain it on the ground that

the rules of civil and criminal evidence are identical, are not, in our opinion, correct. There is no constitutional rule requiring the production of witnesses in open court in civil cases. In equity cases the prevailing practice is against it. The practice has always allowed the depositions of absent witnesses to be taken on either side in civil controversies. It cannot be claimed that this could be done under our Constitution in criminal cases. In the latter, too, a verdict cannot properly rest on a mere preponderance of conflicting evidence, but must be founded on proof which leaves no reasonable doubt of guilt. The production of witnesses in open court is one of the best means of trying their credit, and every one knows how difficult it is to judge from written testimony of the demeanor and appearance which would strike those who examined them. Still more difficult it must be to have the testimony reproduced from the memory of other persons, or from minutes that have never been corrected or compared by the witness at all. These considerations have led some very able courts and judges to the conclusion that the constitutional rule forbids secondary evidence of this kind altogether. Such was the intimation in *People v. Newman* 5 Hill 295; *Finn v. Com.* 5 Rand. 701; *People v. Diaz* 6 Cal. 248. The same ground is very strenuously urged in a very full and able dissenting opinion of Judge Ryland in *State v. McO'Blenis* 24 Mo. 402. See also 2 Evans' Pothier pp. 200–201, 203.

It must be confessed also that although the English practice has always been to allow depositions of deceased witnesses in ordinary criminal cases, a contrary rule seems to be recognized in treason cases upon the ground that there the statutes provide—as they nowhere else provide—but as our Constitution provides in all cases, for confronting prisoner and witnesses on the trial. 1 Hale P. C. 306, 586; 2 Hale P. C. 286; Foster 236 *et seq.;* id. 328.

It is also to be remarked that the English cases usually rest the right to use the depositions of deceased witnesses on the statutes, and that cases of the use of parol evidence of what was sworn on a previous trial are not easily found in

the reports. And there is certainly ground for reflection in the fact that a living witness may—as in this case—fail to convince a jury, when the report of his testimony, to a jury who did not see him, leads to a conviction.

In reaching the conclusion sustained by most of our elementary writers as correctly admitting the testimony of a deceased witness, we do not feel that the doctrine is as well based on principle as is desirable.

But if admitted, it is very clear that there must be the utmost precaution taken to place it before the jury as nearly as possible as the witness, if living, would have done. The record does not show what Tisdale swore to on the first trial, but his deposition returned with the record is of very little, if any, value against any one but Jones. The necessity of very great caution is obvious.

We held in *Misner v. Darling* 44 Mich. 438 that stenographer's minutes, unexplained, and not shown to be correct, could not be received to supply the testimony of a witness not produced in court. That decision is sufficient to dispose of the present case, where no such proof was given.

The proceedings being erroneous for this reason we need not consider the objections to the charge at length. We adhere to our formerly-expressed views that it is not error to refuse specific requests if the charge as given brings out the same points clearly and definitely. In the present case the charge does not sufficiently caution the jury that the conviction of Jones was not to be considered in dealing with Sligh. We have heretofore held that such a caution should be given where defendants are charged as joint wrong-doers. *People v. Stevens* 47 Mich. 411. Neither do we think the jury were sufficiently cautioned in regard to the necessity of showing distinctly the complicity of Sligh in the original taking of the stolen property from the person of Tisdale. The testimony is undisputed that Jones and not Sligh took the money, and that it was not found on Sligh. If he had it, it was received by him from Jones. The offense being statutory, and what would otherwise be petit larceny being magnified into a State-prison offense by the element of

seizure from the person, it became very important to determine whether if Sligh was guilty at all it was of petit larceny or of the larger crime. To be guilty of the latter he must have conspired with Jones in the original taking. If he merely aided him after the taking was complete he was only guilty of larceny.

Under the original statute for the punishment of larceny from the person it was held that no one could be guilty of the complete offense except the actual taker, and that those who would usually be liable as principals in the second degree could only be held for simple larceny, although combining in the full design. *Rex v. Innis* Leach Cr. C. 9; *Rex v. Murphey* id. 302; *Rex v. Sterne* id. 531.

The more recent statutes include all persons in the same way as if it were a common-law felony. 2 Russ. Cr. 132.

Our statute concerning principals and accessories is substantially like the later English statutes, and we think that where more than one person is concerned in the original guilty purpose, and is present aiding and abetting, they are all principals. Comp. L. § 7934.

This, however, would not make one thus guilty who did nothing and had no part in procuring the original taking, and merely received the property after it had been already stolen. That would be larceny, but it would not be larceny from the person. This distinction appears to have been disregarded and no charge was given covering the ground of the requests, while the charge actually given is too broad.

There are some similar matters to which we do not think it necessary now to refer, as they come within the same general doctrines as to the right to definite charges. In the absence of a full statement of the testimony connecting Sligh with the offense we cannot say there may not have been evidence sufficient, and therefore we cannot direct that the reversal shall be without a new trial. But as he has already been subjected to a severer punishment than would be proper in petit larceny, and there has been one disagreement, we deem it proper to say that he should not be further prosecuted without very clear proof.

The judgment must be reversed and a new trial granted and the prisoner discharged from State Prison and remanded to the custody of the sheriff of Kent county, to be let to bail or discharged as the court below and the prosecuting authorities shall find to be in accordance with justice.

The other Justices concurred.