Clifton W. MILLER, Appellant,

v.

STATE of Delaware, Appellee.

Supreme Court of Delaware.

Nov. 21, 1966.

Carl Schnee, Asst. Public Defender, Wilmington, for appellant.

Michael N. Castle, Deputy Atty. Gen., Wilmington, for the State.

WOLCOTT, C. J.; and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

This is an appeal from a conviction of burglary in the first degree. The indictment was found under 11 Del.C. § 392, which provides that anyone who breaks and enters in the nighttime into the dwelling of another with intent to commit murder or rape shall be guilty of burglary in the first degree. The prisoner was sentenced to the minimum penalty of 25 years.

The basic contention of the prisoner is that certain matters taking place in the course of his trial were fatally prejudicial to his only defenses of mistaken identity and alibi. He does not deny that the crime of burglary in the first degree was committed on the night of April 12, 1965 at 203 East 10th Street in Wilmington, the residence of the prosecuting witness. He does not deny that an assailant broke into the home of the prosecuting witness on that night and struggled with her, in the course of which he, by force, attempted to have sexual relations with her. The prisoner, however, strenuously denies that he was the assailant.

The trial came down basically to the question of whom to believe, i. e., the prisoner or the prosecuting witness. The prosecuting witness is an intelligent well-spoken high school English teacher of middle age. She has an excellent standing and reputation in the community in which she lives. The prisoner gives no such impres-

sion, nor does he have a particularly respected standing in the community.

By reason of this disparity of character and standing, and because the basic fact to be determined by the jury was one of credibility as between himself and the prosecuting witness, he says that he was fatally prejudiced by the matters of which he complains. Citing State v. Boyd, 8 Terry 370, 91 A.2d 471, he argues that when proof of guilt or innocence lies in close balance, as in this case, any prejudicial statement, even though ordinarily harmless, must be regarded as having improperly tipped the balance against him.

First, he complains of the following which took place in his cross-examination:

"Q. Have you ever been convicted of a felony in the State of Delaware previous to this?

"A. Yes, Sir.

"Q. How many times?"

The last question was objected to by the prisoner's counsel. The objection was sustained.

10 Del.C. § 4303 removes the common law disability of a felon against testifying, but permits evidence of the fact of conviction to be given in evidence as affecting the credibility of the witness. It was so held in State v. Grant, 3 W.W.Harr. 195, 133 A. 790.

It would seem logical that if a prior conviction of felony has materiality upon the question of credibility, then two or more convictions would have equal, if not more materiality. See III Wigmore on Evidence (3rd Ed.), § 980; McCormick on Evidence, § 43.

■ We are of the opinion, accordingly, that there was nothing improper in the question objected to, provided the State in the event of a denial was prepared to prove the denied fact. The objection should not have been sustained.

■ Next, the prisoner argues that a police sergeant's testimony to the effect that the prisoner told him that he was a heavy drinker, was prejudicial in the context of the trial. In the first place, the sergeant testified gratuitously only that the prisoner told him that he drank quite a bit. The testimony was objected to and was ordered struck. The jury was instructed to disregard it. Obviously, the admission had no relevancy and was inadmissible in evidence, but we think the episode, if error, was harmless error at most.

■ The prisoner next argues that the closing remarks of the prosecutor to the jury commenting upon his failure to call certain witnesses to prove the alibi he offered as a defense was error and was sufficiently prejudicial as to require a new trial. It is necessary to state some of the background of the evidence upon the point.

This crime took place during the night of Monday, April 12, 1965. The prisoner testified that on that night and at the time of the offense, he was present at 836 Kirkwood Street for the "lay-out" or viewing of his stepmother. On cross-examination he answered that present at the viewing were his father and his stepmother's mother as well as many others. He did not call any of the possible witnesses to establish his presence at that place and time, or offer any explanation as to why he did not. His failure to do so was called to the attention of the jury by the prosecutor.

This must be considered in the light of proof offered by the State to the effect that the stepmother died on Friday, April 9, 1965; that there was a viewing in Bethel Church on Tuesday, April 13, 1965 from 6:00 to 8:00 p. m. and a service in that church the same night from 8:00 to 9:45 p. m. The body remained in the church overnight and interment took place on Kent Island in Maryland on Wednesday, April 14, 1965. The body of the stepmother remained in the custody of the undertaker from the date of death until it was brought to the church.

We think under the circumstances the prosecutor's comments were entirely proper. Not only had the State affirmatively proved that the prisoner's alibi was false, but the prisoner, himself, had made no effort to call witnesses who he said could have corroborated his story.

Presumably, these witnesses were accessible to him and were cognizant of facts material and relevant to his defense of alibi. When such is the case, it is permissible for the prosecutor to comment on the prisoner's failure to call them as witnesses in the absence of an explanation as to why he cannot. 23A C.J.S. Criminal Law § 1099.

■ The prisoner complains that in rebuttal the State recalled the prosecuting witness who in fact testified to nothing in rebuttal of his testimony but used the occasion to clarify her prior testimony concerning her identification of him. As a matter of fact, however, the prisoner had testified concerning the occasion at which he was identified, and her testimony can well be considered as being in reply to this. In any event, the trial judge has wide discretion in the conduct of the trial and we think did not abuse it in this respect.

■ The State called as a witness the Pastor of Bethel Church who testified from the church records as to the date of funeral service, etc., of the prisoner's stepmother. While no objection to the admission of the records under 10 Del.C. § 4310(a) was made at trial, the prisoner now complains that they were improperly admitted since the witness was not Pastor of Bethel Church at the time the entries were made.

The point is settled by Watts v. Delaware Coach Co., 5 Terry 283, 58 A.2d 689. The rule is that regularly kept records of businesses, hospitals, churches and other institutions are admissible in evidence even though the witness connected with the institution has no personal knowledge of the recorded facts, or in fact made them. If the record is in his custody and has been made in the ordinary course of business, it is admissible under the statute.

Next, the prisoner complains that testimony concerning the method used by the police to have him identified by the prosecuting witness should not have been admitted into evidence. The facts are that on the Saturday following the offense, the Sergeant of Police called the prosecuting witness and told her that he thought they had the man she had described. She went to the police station where a man flanked by two detectives was brought before her. She could not identify him. Then the prisoner was brought in and she at once identifed him as her assailant. Both the Sergeant and the prosecuting witness testified concerning the details of this identification. She also identified the prisoner in the courtroom.

This method of identification is known as a "show-up" and has been widely criticized. Eye-Witness Identification in Criminal Cases, Patrick M. Wall, pp. 26–40. It appears, however, that only a minority of States refuse to accept evidence of a prior identification by the witness in corroboration of his identification of the accused at trial. See the extensive Annotation, 71 A. L.R.2d 449, and the comments of Dean Wigmore approving the practice. IV Wigmore, Evidence, § 1130.

■ We think there is nothing prejudicial to an accused to permit testimony of a witness' prior identification of an accused in corroboration of his identification of the accused at trial, provided the prior identification was made under circumstances which preclude suspicion of unfairness or unreliability. State v. Williams, 39 N.J. 471, 189 A.2d 193; State v. Frost, 105 Conn. 326, 135 A. 446.

■ It seems apparent to us that there is nothing in the circumstances surrounding the identification by the prosecuting witness of the prisoner in the police station which threw suspicion on the fairness or reliability of the identification. The pris-

oner had been picked up by the police as an individual fitting the description of the assailant previously furnished by the prosecuting witness. She then went to the station and, after rejecting at least one other person, immediately and spontaneously recognized the prisoner when he came into her view. We think the testimony was admissible.

■ Finally, the prisoner argues that prejudicial error was committed by the failure of the trial judge to instruct the jury that evidence of prior identification is merely corroborative of the identification made at the trial, and that the method used in this case is entitled to less weight than would have been the case if he had been picked out of a lineup by the prosecuting witness.

We think the point without merit. The trial judge carefully instructed the jury to the effect that the matter of the identification of the prisoner was of extreme importance in the case; that if there was any doubt concerning this, the jury must acquit, and that in deciding this issue, they must weigh the circumstances under which the identification was made. Finally, the jury was specifically instructed that a preferable method of identification is to pick the accused from a lineup and that if this is not the method used, then all the circumstances must be carefully considered.

■ We think the substance of the instruction is exactly what the prisoner requested. To be sure, it was not in the precise language requested, but that makes no difference because a defendant has no right to an instruction in a precise form. He is entitled only to a correct statement of the substance of the law. That, he received.

■ In the view we take of the case, therefore, State v. Boyd, supra, has no application. Its rule applies only when the evidence is in such close balance between guilt and innocence that any prejudicial matter may be said to tip the scales.

Such is not this case. To be sure, the issue was mainly one of credibility. The State's evidence, we think, destroyed the prisoner's credibility, and since we have found no error, with the possible exception of the officer's statement about the prisoner's drinking, error which we think was miniscule at most, the situation at bar is wholly different from that in the *Boyd* case.

The conviction below is affirmed.