**Sylvester SHOCKLEY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Sept. 22, 1970.

Morton Richard Kimmel of Tybout & Redfearn, and Peter Warren Green, Wilmington, for appellant.

Francis A. Reardon, State Prosecutor, Wilmington, for the State.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal by Sylvester Shockley from a conviction of manslaughter following trial on an indictment charging second degree murder. Shockley was sentenced to imprisonment for 15 years and appeals.

Since the chronology becomes important by reason of Shockley's arguments, we set it forth. On February 16, 1968, one Nicholas Radick, a merchant, was shot and

killed in his store. Shockley was arrested on a first degree murder charge on February 21, 1968. He was, at the time, 17 years old and was held for the Family Court of New Castle County.

On March 22, 1968, the Family Court scheduled a hearing to determine whether Shockley was amenable to the processes of the Family Court. In addition, a private psychiatric examination was ordered. On May 29, 1968, a judge of the Family Court ruled from the bench that Shockley's case should be transferred to Superior Court. On June 3, 1968, the Grand Jury of New Castle County indicted Shockley for murder in the first degree.

Meanwhile, on February 29, 1968, pursuant to 11 Del.C., § 3508, one Jerome Hamilton, a material witness, had been granted immunity from prosecution so that the State could call him as a witness for the prosecution.

Thereafter, in early June, counsel for Shockley demanded an immediate trial. At that time the State indicated difficulty with the possible testimony of Jerome Hamilton, viz., varied versions of the circumstances, and the necessity of making a decision as to whether or not the prosecution would proceed or be *nolle prossed*.

Shockley was arraigned ultimately on a charge of second degree murder on September 6, 1968 and entered a plea of "not guilty". Trial was scheduled for September 30, 1968 but, at the request of the State, a continuance was granted to allow the State to re-examine the problem of the vacillating testimony of the State's prime witness, Jerome Hamilton. Thereafter, Shockley moved to dismiss the indictment by reason of unnecessary delay in bringing him to trial. This motion was denied on October 23, 1968 and trial was scheduled 'for November 15, 1968.

Shortly before November 15, the State again applied for a continuance on the ground that unforeseen circumstances had arisen and that the trial would last longer than the originally estimated one day. This request was granted and trial finally commenced on December 9, 1968.

Four questions are raised by Shockley:

I. Should the indictment be dismissed because he was not given a speedy trial?

II. Was prejudicial error committed in not having him present during the proceeding resulting in the granting of immunity to Jerome Hamilton?

III. Was prejudicial error committed in refusing to instruct the jury with regard to the immunity granted Jerome Hamilton, the State's principal witness?

IV. Should the indictment be dismissed by reason of the failure to comply with 11 Del.C. §§ 2711 and 2712 requiring that a written statement be filed with the Prothonotary of the unamenability of a minor to the processes of the Family Court before the case be transferred for prosecution as an adult to the Superior Court?

I.

It is, of course, axiomatic that under Article 1, Section 7 of the Constitution of Delaware, Del.C.Ann., and under the Sixth Amendment to the Federal Constitution, all persons charged with crime have an absolute right to a speedy and public trial before an impartial jury. The question presented in this appeal is whether or not there has been an unreasonable delay caused by the State in bringing Shockley to trial in violation of those constitutional provisions.

Shockley was arrested on February 21, 1968 and charged with murder in the first degree. In view of his age at that time, he was brought before the Family Court and charged with delinquency under the Family Court Act, viz., first degree murder. In the Family Court the charge of first degree murder was reduced to second degree murder. The Attorney General filed a petition to transfer the case to Superior Court pursuant to 11 Del.C. §§

2711 and 2712. A hearing was scheduled for March 22 to determine the amenability of the prisoner to the processes of the Family Court, and a psychiatric examination of Shockley was ordered.

Meanwhile, immunity had been granted to Jerome Hamilton. The proceedings in the Family Court on March 24, 1968 were continued generally until the receipt of the psychiatrist's report. Finally, on May 29, the Family Court Judge ruled orally that the case should be transferred for trial to Superior Court. At the same time, however, he scheduled a preliminary hearing in Family Court on the charges. In order to break the deadlock which was building up, the Attorney General presented an indictment to the Grand Jury which, on June 3, returned it as a true bill charging the prisoner with murder in the first degree, a crime over which the Family Court had no jurisdiction at all. 10 Del.C. § 957.

Thereafter, in attempting to bring the prisoner to trial, the State encountered difficulty with Jerome Hamilton, a recalcitrant witness, whose prospective testimony varied from one version of the circumstances to another. The prisoner was arraigned finally on a charge of second degree murder on September 6 at the direction of the State. Originally the trial was scheduled to commence September 30, but following two requests for continuance by the State, finally commenced on December 9, a delay from the first trial date of slightly in excess of two months.

Shockley relies primarily upon Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) in support of his argument of inordinate delay. In that case eight years had elapsed from the original arrest of Dickey and his ultimate conviction in Florida for armed robbery. The reason for the delay was that throughout the period Dickey had been imprisoned on a federal charge and the State of Florida had refused, despite his frequent applications, to obtain custody of him through a writ of *habeas corpus ad prosequendum.*

The Supreme Court of the United States held, particularly in view of the death of two important witnesses in the interim, that Dickey's right to a speedy trial had been violated and reversed his conviction in Florida.

The majority opinion in the *Dickey* case, however, contains the following statement:

"Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law."

■ In the case before us, unquestionably, the two continuances of the trial dates were granted for the convenience of the State due to the difficulty it was having with its main witness. However, there is no fatal prejudice arising out of this delay that we can see on the record before us. Whatever delay took place did not make it impossible for Shockley to call in his defense such witnesses as he wanted to. There is no showing of death or absence of any material witness.

Under the circumstances, we think the delay in this case did not rise to the dimension of deprivation of the constitutional right to a speedy trial.

We take the occasion, nevertheless, to say that arrest in February and trial in December in this case do not seem to conform with the highest standards of the administration of criminal justice. We urge all concerned to improve the tempo of disposition of criminal cases at all stages.

II.

■ Shockley argues that it was error to fail to have him present and to permit his counsel to be heard at the immunity hearing with respect to Jerome Hamilton under 11 Del.C. § 3508. That section per-

mits "in any criminal action or in any investigation carried on by the Grand Jury" the grant of immunity after hearing to a prospective witness, who may then be compelled to answer incriminating questions but may not be prosecuted for the crime about which he is testifying.

Basically, Shockley argues that the immunity hearing was part of the criminal action brought against him since, among other things, the petition was so titled in the caption.

We think, however, that the constitutional right given every citizen to be present at all stages of criminal prosecutions against him and to confront witnesses testifying in behalf of the State does not extend to an immunity hearing. The immunity hearing was not part of Shockley's trial, and no witness appeared "against" him, in the constitutional sense, at that hearing. We hold, therefore, that Shockley was not entitled to be present or represented at the immunity hearing.

### III.

Shockley asserts prejudicial error in the refusal of the trial judge to instruct the jury specifically upon the fact that Jerome Hamilton had been granted immunity from prosecution in return for his testimony on behalf of the State. However, throughout the trial, numerous comments were made by counsel for both the State and the defense, which clearly demonstrated to the jury that Jerome Hamilton had been granted immunity.

We think it better practice that the requested instruction be given in every case in which a grant of immunity from prosecution has been made. Under the circumstances in this case, however, there was such frequent reference to the fact that the jury was well aware that Hamilton's testimony had been obtained by a grant of immunity from prosecution. Nothing would have been added to the jury's information by a repetition of the fact in the charge; indeed, undue emphasis may have been the result.

We find no reversible error on this ground.

### IV.

Shockley complains that the Superior Court had no jurisdiction over him because of the failure of the State to comply with 11 Del.C. § 2712, which requires that the Attorney General file in the Prothonotary's office a statement in writing signed by the Family Court Judge ordering that a minor be turned over to the Superior Court for trial as a person not amenable to the processes of the Family Court.

Apparently, there was a technical failure to file the statement in writing, but the fact remains that the amenability hearing in the Family Court was proper. We think there was no error in the technical failure to file a paper.

The conviction below is affirmed.