**WILMINGTON HOUSING AUTHORITY,**
Plaintiff Below, Appellant,

v.

**GREATER ST. JOHN BAPTIST CHURCH,**
Defendant Below, Appellee.

Supreme Court of Delaware.

April 26, 1972.

Thomas Herlihy, III, Wilmington, for plaintiff below, appellant.

Leonard L. Williams, Wilmington, for defendant below, appellee.

Before WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

HERRMANN, Justice:

In this condemnation case, we are required to construe 10 Del.C. § 6108(e).[1] The portion pertaining to religious corporation or body was enacted in 1968.

Greater St. John Baptist Church (hereinafter the "Church") was awarded $98,000. as just compensation for the taking by the Wilmington Housing Authority (herein-after "Authority") of its church at 509–513 Madison Street, in Wilmington. The award was made after trial of the issue of just compensation before a commission, confirmed by the Superior Court. 10 Del.C. § 6108.

I.

It was agreed by all that the proceedings were governed by 10 Del.C. § 6108(e). The disagreements at trial arose over the difference of opinion as to the meaning of § 6108(e).

The Trial Court admitted in evidence, over the objection of the Authority, an option the Church had acquired to buy a substitute site at 1605 North Broom Street. In its instructions to the commission, the Trial Court charged that "the value of the church building shall be arrived at by using the reproduction cost approach"; that this "means that the value of the building involved shall be the reasonable cost, as of this date, of erecting a new structure of substantially the same size and of comparable character and quality of construction"; that "this cost shall be adjusted to physical and/or functional depreciation". After defining the "proper depreciation which you should deduct from the reproduction cost" in order to ascertain "the value of the church building for just compensation", the Trial Court charged the commission as follows:

"Having concluded what you believe to be a fair and proper award covering the

---

I. 10 Del.C. § 6108(e) provides:

"(e) At the trial any party may present competent and relevant evidence upon the issue of just compensation and all such evidence shall be given in the presence of the court and the commissioners. The court shall, during the course of the trial, determine all questions of law and the admissibility of all evidence. A religious corporation or religious body of this State as a party to a condemnation proceeding may present as competent or relevent testimony upon the issue of just compensation the reasonable costs as of the date of the taking of the church property, of erecting a new structure of substantially the same size and of comparable character and quality of construction as the acquired church structure, at some other suitable and comparable location to be provided by such religious corporation or body. The admissibility of such evidence is conditioned upon the religious corporation or religious body being a duly constituted legal corporation or body and using the acquired site as a church or place of religious worship; and upon the further condition that the new structure or building to be erected for religious worship shall be located within the county of this State in which the acquired site is located at the time of the taking of possession of said acquired site." The portion pertaining to religious corporation or body was enacted in 1968.

construction costs minus depreciation, you should then give consideration to an additional sum of money to be made a part of your total award which would reflect just compensation for the taking of the land involved. Now, in this particular, you will not be giving consideration, as is in the normal case, to the fair market value of the particular land and its particular location. In this instance, due to to the fact that this is church property controlled under the statute I have already read to you, it will be your task to determine what is the fair market value of a substitute site which might be acquired by the church at some other suitable and comparable location for the purpose of rebuilding or reconstructing a comparable church structure. In this particular and with regard to the land, you should be guided by the standard of fair market value. * * *."

Manifestly, the Trial Court based the charge upon its interpretation of § 6108(e).

The Authority appeals on the ground that it was fundamental error to permit the value of the new, substitute site to become involved in the trial of the issue of just compensation for the property being taken. We agree.

### II.

■ There is significant ambiguity in § 6108(e) arising from the reference therein to "some other suitable and comparable location". The language may be construed to mean that, in the trial of the issue of just compensation for the property taken, the purchase price of such other "location" may be included in the "reasonable costs" of "erecting a new structure"; or it may be construed to mean merely that the "reasonable costs" of "a new structure", which must of course be erected elsewhere, is admissible in evidence in the trial of the issue of just compensation. In resolving this statutory ambiguity, we are of the opinion that § 6108(e) must be construed in the latter fashion in giving expression to the most reasonable legislative intent.

■ Among general principles in the law of eminent domain, well recognized at the time of the enactment of § 6108(e), are the following: It is settled in Delaware that the "just compensation" constitutionally guaranteed for the taking of real property is the fair market value thereof at the time of the taking. Wilmington Housing Authority v. Harris, 8 Terry 469, 93 A.2d 518 (1952); Board of Education, etc. v. 13 Acres, 11 Terry 387, 131 A.2d 180 (1957); 0.744 of an Acre, etc. v. State ex rel. State Highway Department, Del.Supr., 251 A.2d 341 (1969). See, generally, United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943). There are three generally recognized "approaches" to the appraisal of the fair market value that is deemed to equate just compensation in our practice: (1) the capitalization of income approach; (2) the comparative sales approach; and (3) the approach that adds to the cost of reproduction or replacement[2] of the structure, adjusted for depreciation, the fair market value of the land upon which the structure stands. One approach may be deemed more appropriate than another in a given case; each may be used as a check upon the efficacy of the other; but the latter is deemed to measure the upper limits

2. There is a technical difference between "reproduction" and "replacement" sometimes recognized by appraisers and courts and sometimes the source of confusion. "Reproduction" is deemed to be the creation of an identical or replica structure, whereas "replacement" is deemed to be the creation of a suitable substitute structure. The latter is considered a more realistic and practical concept. 2 Orgel, Valuation under Eminent Domain (2d Ed.), § 198. The term "replacement cost", rather than "reproduction cost", will be used hereinafter, therefore, especially since the language of § 6108(e) fits the substitute rather than the replica concept.

of probable value. Orgel, Valuation under Eminent Domain (2d Ed.), §§ 176–187, §§ 139–149, §§ 188–198. The replacement cost approach to valuation in condemnation cases is generally used for non-profit "service properties" that seldom come on the market, like churches, schools, and cemeteries. The value of such "service properties" cannot usually be appraised by comparable sales or capitalization of earnings. In the absence of either of these more reliable tests of value, appraiser-witnesses are generally permitted to add the structural costs of the building to the market value of the vacant land, with some arbitrary deductions for physical and functional depreciation. See Orgel, Valuation under Eminent Domain (2d Ed.), §§ 40, 188, 198.

The structural cost approach to valuation was recently recognized by this Court in 0.744 of an Acre v. State ex rel. State Highway Department, Del.Supr., 251 A.2d 341, 342 (1969) which dealt with the taking of public park lands of the City of Wilmington for highway purposes. We there stated:

"* * *. Where land is condemned on which is erected a building or buildings devoted to a particular and unique use, such as churches, schools, etc., as to which there is no ready market, then evidence of the cost of reproduction less depreciation may be received to be added to the value of the land, itself, to establish market value. * * *. Such evidence is received, however, not as a measure of value, but merely as one of many circumstances which go to the fixing of a figure set as the market value of the property. * * *."

To the City's contention that actual replacement costs of new park lands should be awarded for the taking of existing park lands, this Court said: (251 A.2d at 343)

"We think, however, the City should be no better off in this respect than is the private owner of real estate, devoted to a particular or charitable use, from whom land has been taken by the State for public purposes. The Superior Court has held that a private owner may not be compensated for the loss of a business conducted on a property. * * *, and it seems apparent that a trustee holding land for a charitable use would not be entitled, in the event of its condemnation, to a sum permitting the duplication of the facilities taken. In all such cases, the measure of just compensation is market value."

It will be noted that throughout these restatements of the replacement cost formula for valuation, it is the value of the land taken—not of some other land elsewhere— that is added to the depreciated cost of the structure to arrive at just compensation.

■■■ This was the law of eminent domain when 10 Del.C. § 6108(e) was enacted in 1968. General rules of construction require that a statutory ambiguity be interpreted in accordance with pre-existing law, unless there is an "irreconcilable inconsistency"; and that amendment of existing law by implication be not favored. State for Use of Davis v. Adams, 3 Terry 54, 27 A.2d 401, 403 (1942). In the absence of an express provision to the contrary, we thus conclude that the proper application of § 6108(e) in the instant case, in accordance with pre-existing law, required that the value of the Madison Street land be added to the depreciated cost of replacement of the building—not the value of the new site on Broom Street. We find the latter formula not only inconsistent with general and accepted principles of the law of eminent domain, but also incongruous in that it permits the "adding of apples and oranges." It is haze enough for a commission to be obliged to contemplate appraisals based upon conjectural considerations such as estimated costs of replacement depreciated for physical and functional obsolescence. The haze becomes practically impenetrable, we think, when the commission is told to ascertain the fair market value of the

property taken by adding to the depreciated replacement cost of the structure the fair market value of some other and different parcel of land.

In the instant case, the Trial Court correctly applied the ordinary replacement-cost-less-depreciation formula [although the depreciation factor is not mentioned in § 6108(e)], except for the identity of the land value to be added to the formula. The result reached in the instant case is to give to religious groups a different measure of just compensation in condemnation cases than is afforded to any other private or public owner of real property. The Statute does not mandate such result; and it may not be implied. If we are to depart from well settled concepts of just compensation, including fair market value as the measurement thereof, the General Assembly must be much more explicit than it was in § 6108(e).

The result we reach here is in accord with the decision of the Maryland Court of Appeals in its construction of the Maryland Statute which obviously was the progenitor of our § 6108(e). City of Baltimore v. Concord Baptist Church, Inc., 257 Md. 132, 262 A.2d 755 (1970). As indicated in that case, any construction of § 6108(e) other than that reached herein, resulting in special preferences for religious organizations, may encounter serious constitutional questions arising from the First and Fourteenth Amendments to the Federal Constitution and Article 1, Section 1 of the Delaware Constitution, Del.C.Ann. In view of our interpretation of § 6108(e), however, we do not reach such constitutional considerations.

We hold, therefore, that the Trial Court erred in admitting evidence of the value of the new site selected for the church and in instructing the jury to consider such value in the formulation of the award.

The cause is reversed and remanded for further proceedings not inconsistent herewith.