David M. KEYS, Defendant below,
Appellant,

v.

STATE of Delaware, Plaintiff below,
Appellee.

Supreme Court of Delaware.

Argued Nov. 15, 1974.

Decided March 14, 1975.

Donald W. Huntley, Asst. Public Defender, Dover, for defendant below, appellant.

Harrison F. Turner, Deputy Atty. Gen., for the State of Delaware, Dover, for plaintiff below, appellee.

Before HERRMAN, C. J., DUFFY, J., and QUILLEN, Chancellor.

PER CURIAM:

■ This appeal gives rise to the first interpretation by this Court of a relatively new criminal evidence Statute, 11 Del.C., § 3509, entitled "Use of prior statements as affirmative evidence". Since the interpretation is new, it will be mandatory only as to cases in which the trial begins after February 24, 1975; it will not be applied retroactively.[1]

The Statute, enacted in 1970, reads as follows:

"§ 3509. Use of prior statements as affirmative evidence.

"(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

"(b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

"(c) This section shall not be construed to affect the rules concerning the admission of statements of defendants or of those who are co-defendants in the same trial. This section shall also not apply to the statements of those whom to cross examine would be to subject to possible self-incrimination."

The State has accepted the statement of facts contained in the appellant's brief, and, we rely on that statement with some further supplement from the record. The defendant was convicted of three counts of kidnapping, one count of burglary in the first degree, one count of theft and three counts of conspiracy. The pertinent evidence appears to be as follows.

The State presented testimony by several witnesses to indicate that on August 17, 1973, three people, disguised and armed with guns, entered the home of James J. Ross and there held Mrs. Ross and Mr. Flemming, her father, at gunpoint until Mr. Ross came home. None of the witnesses specifically identified the defendant as being one of the perpetrators.

The testimony further indicated that when Mr. Ross arrived home he was taken under gunpoint and forced to accompany one of the three men to the Woolco Department Store, of which he was manager, where he was forced to open the safe and take therefrom certain monies, as well as a gun that was taken from a showcase. Mr. Ross was then returned to his home, whereupon Mr. and Mrs. Ross as well as Mr. Flemming were bound and the men left in Mr. Ross's car.

The State introduced into evidence three out-of-state written statements, two made

1. By a letter dated February 24, 1975 over the signature of the Chief Justice, addressed to counsel in this case representing the Attorney General and the Public Defender with copies to each criminal Trial Court, we informed the Bar and Bench as follows:
"Gentlemen:
"While the Court is not in a position to render a final opinion on the above captioned case nor to indicate the ultimate disposition of this appeal, the Court has reached the following decision about the construction of 10 [11] Del.C. § 3509: In order to offer the out-of-court statement of a witness, the Statute requires the direct examination of the declarant by the party offering the statement, as to both the events perceived or heard and the out-of-court statement itself.
"We announce this conclusion in advance of the opinion as a guideline to the Bar and Bench in cases about to be tried.
"Very truly,
/s/ D. L. Herrmann"

by Mr. Floyd Wells and another made by the defendant himself. Mr. Wells' statements were introduced, under 11 Del.C., § 3509, through the testimony of Detective Thomas Breazeale of the Dover City Police Department and the testimony of Deputy Attorney General Dana Reed. Mr. Wells was present and had been granted immunity pursuant to 11 Del.C., § 3508 prior to trial in order to make him available for testimonial purposes. He was not called to the witness stand by the State and, although the defendant was specifically offered an opportunity to call him, he did not do so.[2] The statements by Mr. Wells were admitted over the objection of the defendant and their admission constitutes the major issue on this appeal. The statements clearly implicated the defendant and others in the crimes. In particular, the statements indicated the defendant had participated in the planning and was seen near the house shortly before the unlawful entry.

The statement of the defendant was found to be admissible at a pretrial hearing and no issue concerning it is directly before us. Indeed, the defendant took the stand and admitted making the statement although he denied its truth and contended that it was a complete fabrication which he was induced to make by others charged with crimes arising from the same factual allegations. The defendant testified that the statement, which acknowledged his participation in the crimes, was made under stress during a period of incarceration and under the belief that the statement could be recanted. In the statement, the defendant had acknowledged that he was one of the persons who entered and stayed at the house at the time of the criminal activity.

The State introduced into evidence various articles of apparel, U. S. currency, a handgun and a cartridge belt which were identified as being involved in the crimes, as disguises or weapons or as fruits of the crimes. These articles were found in the home of the defendant. The defendant testified that on the morning following the crimes he consented, for a payment of $1,000, to store these items in his home. The defendant also presented evidence by several witnesses to the effect that he was in his home during at least most of the period when the crimes were committed. The defense testimony indicated that the defendant was ill during the period and that a friend, in addition to the defendant's wife, stayed in the defendant's home for the entire night in question.

The defendant contends that the Trial Court erred in admitting the statements of Wells both on Constitutional grounds and on the basis of the Statute itself. We do not find it necessary to determine whether the admission of the statements was error under the confrontation provision of the Sixth and Fourteenth Amendments of the United States Constitution [Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L. Ed.2d 923 (1965)] because we find the admission violated the Statute itself and was therefore error. And we say so for two general reasons: the statutory language used by the General Assembly and the practicalities of a fair criminal trial.

First, we rely on the language of the new Statute in the traditional context of common law evidence. The traditional rule is that prior out-of-court statements are not admissible except for special purposes such as: admission of a prior inconsistent statement for impeachment purposes only [Thompson v. State, 4 Storey 27, 174 A.2d 141 (Sup.Ct.1961)]; admission of a prior consistent statement to rebut an attack of recent fabrication or improper influence or motive for rehibilitation purposes only [Wisniewski v. State, 1 Storey 84, 138 A.2d 333 (Sup.Ct.1957)]; and admission of a prior statement for evidence of identification [Miller v. State, Del. Supr., 224 A.2d 592 (1966) (although the

2. The State candidly acknowledged at oral argument that Wells was not called because the State was not sure how he would testify.

precise identification there may now raise questions on "line-up" grounds) and Taylor v. State, Del.Supr., 298 A.2d 332 (1972)]. Since the Statute represents a departure from the common law rule of evidence and since the departure, at least in some instances, affects the traditional rights of persons interested in litigation, we think the Statute should be strictly construed. Mumford v. Robinson, Del.Supr., 231 A.2d 477 (1967). Even if the Statute is viewed in a limited sense as remedial, it becomes only one segment of the complex that is the law of evidence and it should be interpreted in the light of that preexisting law, knowledge of which is charged to the General Assembly. State for Use of Davis v. Adams, 3 Terry 54, 27 A.2d 401 (Super.Ct.1942). Thus, while the Court should give full effect to the limited change made by the General Assembly, strict construction is applicable. There should be a preference towards a narrow interpretation of the language in order to avoid overturning established procedures by implication not necessary from the statutory language. DeJoseph v. Faraone, Del.Super., 254 A.2d 257 (1969); Wilmington Housing Authority v. Greater St. John Baptist Church, Del.Supr., 291 A.2d 282 (1972).

■■ We find that the Statute was not intended by the General Assembly to dispense with the traditional requirement that the State produce the live testimony of the witness. Moreover, we feel this interpretation is compelled by the statutory language. It is of course fundamental that in construing a Statute, the Court must seek to ascertain and give effect to the intention of the Legislature as expressed in the Statute itself. Ernest DiSabatino & Sons, Inc. v. Apostolico, Del.Super., 260 A.2d 710 (1969), aff'd. Del.Supr., 269 A.2d 552, aff'd. sub nom. Magness Construction Co. v. Waller, Del.Supr., 269 A.2d 554 (1970).

First, it should be noted that the Statute uses the word "witness". In this context, the word can be interpreted in two ways. It could mean one who, being present, personally saw or perceived some thing pertinent to the criminal case being tried, that is, an eyewitness. In re Harter's Estate, 229 Iowa 238, 294 N.W. 357, 362 (1940). Or, it could mean one who testifies to what he has seen or perceived. Wigginton v. Order of United Commercial Travelers of America, 126 F.2d 659, 666 (7th Cir. 1942), cert. denied, 317 U.S. 636, 63 S.Ct. 28, 87 L.Ed. 513 (1942).

■ In the context of an evidence Statute and in light of the preference for strict construction, we find the latter definition to be the appropriate one. Thus, ignoring any special problems presented by depositions [Superior Court Criminal Rule 15], the Statute requires the out-of-court declarant to be an in-court witness. This construction is consistent with the prior law and avoids a radical departure from traditional concepts by implication. The requirement also minimizes the abuse which can arise in out-of-court statements through the use of leading questions and questions calling incompetent, irrelevant and immaterial answers.

■ Second, the Statute requires the witness to be "subject to cross examination". Cross-examination has been given the following definition:

"CROSS-EXAMINATION. In practice. The examination of a witness upon a trial or hearing, or upon taking a deposition, by the party opposed to the one who produced him, upon his evidence given in chief, to test its truth, to further develop it, or for other purposes."

Black's Law Dictionary 450 (rev. 4th ed. 1968). See also Sherrick v. State, 157 Neb. 623, 61 N.W.2d 358, 365 (1953). In this country cross-examination has been tied to the content or at least to the occurrence of direct examination. See Philadelphia & T. R. Co. v. Stimpson, 39 U.S. (14 Pet.) 448, 10 L.Ed. 535 (1840), discussed at 10A Words and Phrases, "Cross-Examination" p. 250; White v. Dougherty, 1 Boyce 355, 76 A. 609 (Super.Ct.1910), rev'd on

other grounds, 2 Boyce 316, 80 A. 237 (Sup.Ct.1911); A. H. Angerstein, Inc. v. Jankowski, 5 Storey 304, 187 A.2d 81 (Super.Ct.1962). In short, cross-examination does not simply mean the right of an adversary to examine the witness. It generally means the right of the adversary to examine the witness after the witness has been examined by direct examination. Thus, in the present case, the State had the burden of examining the witness on direct examination under the Statute.

These two conclusions are reinforced by a third statutory phrase which says the Statute shall apply "regardless of whether the witness' in-court testimony is consistent with the prior statement or not." This clearly implies a requirement of in-court testimony by the witness. The same implication arises from a fourth statutory phrase which says the Statute shall apply "with or without a showing of surprise by the introducing party." Again, the presumption is that the declarant will be a testifying in-court witness.

We conclude that, in order to use the out-of-court statements of Wells, in the situation presented by this case, the legislative language required the production and direct examination of the witness Wells by the prosecution. We do not mean to suggest any precise form of direct examination except that it should touch both on the events perceived and the out-of-court statement itself. While we recognize the Statute could be read to impliedly require the in-court testimony of the declarant prior to any other evidence of the out-of-court statement and while such an interpretation would have some basis by analogy with the traditional foundation rule with respect to the admission of prior inconsistent statements [2 Wharton's Criminal Evidence, § 468, 416–421 (13th ed); compare State v. Grant, 3 W.W.Harr. 195, 133 A. 790 (Gen.Sess.1926)] and while such a practice strikes us at first blush as preferable, we make no such judgment as a matter of law because it has not been argued and there may be implications not readily apparent. The order of affirmative proof is usually a trial matter for counsel and the Trial Court.

We find a second general reason also compelling. The admission of out-of-court statements can have an impact on the practical ebb and flow of the criminal trial drama. In this case, the written statements of Wells were admitted over objection during the testimony of the eighth and ninth out of ten prosecution witnesses, a police investigator and a prosecutor, the Trial Court being of the view that Wells' presence at trial was sufficient. The Trial Court's view was based upon the opportunity for the defendant to call Wells for cross-examination. Indeed, in front of the jury after the ninth witness testified, the Trial Judge advised defense counsel that "Mr. Wells still remains in the courtroom subject to your cross-examination if you desire to call him as a witness and cross-examine him." The defense counsel declined and stood on his objection.

This scene dramatizes the chief issue in this appeal. The prosecution, instead of bearing the burden of sponsoring as a witness the out-of-court declarant [who, for a while at least, appears to have been an accomplice and who had been granted immunity and whose testimony is thus doubly suspect] [3], is able to present the out-of-court statement through an officer of the law and an officer of the Court. Additionally, the burden is shifted to the defendant to call the witness and it thus appears to the jury, regardless of technicalities of cross-examination and for-

3. Cautionary instructions are customarily given. Shockley v. State, Del.Supr., 269 A.2d 778 (1970); Bland v. State, Del.Supr., 263 A.2d 286 (1970). But, in this case, the Court refused to give the customary cautionary charge about accomplice testimony or the testimony of one granted immunity because "[i]t should be noted Mr. Wells was not a witness."

mal vouching for the witness, that the defendant is sponsoring the witness or refusing to sponsor him. That burden is not fair. If the State carried its position to its logical extreme, the State could rest its case without calling a single eyewitness to any pertinent fact. That is not a trial as we know it. The State should not be able to rest its case without calling the witnesses it relies upon to prove it. This is particularly true when the State relies on witnesses who have obvious vulnerability as to credibility.

■ The State has argued that, even if the Wells' statements are excluded, the convictions should still be upheld because any error is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Day v. State, Del.Supr., 291 A.2d 286 (1972). The evidence erroneously admitted was important evidence admitted on the offer by the State and for which the State must accept responsibility. We recognize the defendant's own statement was in evidence and the extremely strong circumstantial case made by the State. But the defendant offered an explanation which was supported by some corroborative evidence. The question is not how we view the evidence. We are not the triers of fact. There is a reasonable possibility, in our opinion, that the matters complained of contributed to the conviction. Herhal v. State, Del.Supr., 243 A.2d 703 (1968). Whatever our view of the evidence, we cannot say with certitude that the error was harmless or harmless beyond a reasonable doubt. Superior Court Criminal Rule 52; Chapman v. California, supra. If we were to so hold, it would be an infringement on the role of the jury.

■ The judgment below included three convictions for conspiracy. The State has conceded that sentences on two of the conspiracy counts violates 11 Del.C.,

§ 521(1).[4] Since our decision on the evidence question requires a reversal and new trial on all counts, however, it is not necessary for us to correct any error that may exist in this regard. We assume that this matter will be reviewed upon remand.

The judgment is reversed and the case remanded for a new trial.

QUILLEN, Chancellor (concurring):

While I join in the opinion of the Court, in my judgment, further comment in two respects is desirable beyond that contained in the Court's opinion. I therefore take the opportunity to make such comment by this concurring opinion.

First, I think it is important to attempt in capsule form to demonstrate for public understanding how the issue in this case is one of broad application and significance which could affect any citizen. It is important to do so because this case and others now pending on appeal, involving similar or related issues, concern criminal actions of some of the most serious crimes in our free society. I am keenly mindful of the seriousness of the allegations, from the State's point of view as well as the defendant's. But the principle involved is also vital to the individual freedom of everyone. The decision is not based on an irrelevant technicality. The average citizen accused of speeding would feel great resentment if the State were permitted to prove its case through a single police witness who did not see the incident and who relied solely on what eyewitnesses told him. It would be unfair for the speeding defendant to have to defend against such an attack. The principle is no less valid in a serious case carrying a severe punishment.

Second, I think it is important that there be some comment which attempts to supply theoretical support to the opinion. This is especially so now because the hearsay rule

4. The Statute reads in part: "If a person conspires to commit a number of crimes, he is guilty of only one conspiracy, so long as the multiple crimes are the object of the same agreement of continuous conspiratorial relationship."

is being reviewed constantly and suggestions for reform are in serious conflict. If the Statute were absolutely clear, perhaps legal policy would have no role to play. But the Statute is not absolutely clear. Therefore, it seems to me that there is a duty to justify the interpretation of the Statute as consistent with sound legal theory. This is admittedly difficult because legal writing is far from consistent and because any effort to explore the subject can be met by a reasonable attack, particularly when the effort is not made by an evidence specialist. But I think the effort should be made so that the ultimate conclusion can be better tested.

Not only do the statutory language and practical trial implications lead me to the conclusion that there was error in this case but I think that, tested by the theory and policy of the hearsay rule, our interpretation of the Statute has a sound policy base. The hearsay rule evolved to encourage witnesses to testify as accurately as possible and to expose whatever inaccuracies might appear in their testimony. To this end the rule allows statements to be admitted for substantive purposes only where they are made under oath, before the trier of fact, by a person subject to cross-examination. McCormick's Handbook of the Law of Evidence, § 245, at 581–82 (2d ed. E. Cleary 1972). The oath is important because it induces a special obligation to tell the truth and impresses upon a witness the danger of a perjury penalty. Cross-examination, the most crucial of the hearsay rule requirements, is important because it affords an opportunity to expose either deliberate falsehood or faults in a witness's perception and memory. See McCormick, *supra*, § 245, at 582–83. These requirements will not be discussed further because it is the third requirement, that the witness testify before the jury, which mainly concerns us in this case.

The witness's presence before the trier of fact, while subordinate to the right of cross-examination, is important because it enables the judge and jury "to obtain the elusive and incommunicable evidence of a witness' deportment while testifying, and a certain subjective moral effect is produced upon the witness." 5 J. Wigmore, Evidence, § 1395, at 125–26 (3rd ed. 1940). The value has long been recognized as the following quotes taken from 5 Wigmore, *supra*, § 1395 at 126 indicate:

"1857, RYLAND, J., in State v. McO'Blenis, 24 Mo. 421: 'There are many things, aside from the literal import of the words uttered by the witness while testifying, on which the value of his evidence depends. These it is impossible to transfer to paper. Taken in the aggregate, they constitute a vast moral power in eliciting the truth, all of which is lost when the examination is had out of court and the mere words of the witness are reproduced in the form of a deposition.'

"1882, CAMPBELL, J., in People v. Sligh, 48 Mich. 56: 'The production of witnesses in open court is one of the best means of trying their credit; and every one knows how difficult it is to judge from written testimony of the demeanor and appearance which strike those who examined them. Still more difficult must it be to have the testimony reproduced.'

"1860, Chief Justice APPLETON, Evidence, 220: 'The witness present, the promptness and unpremeditatedness of his answers or the reverse, their distinctness and particularity or the want of these essentials, their incorrectness in generals or particulars, their directness or evasiveness, are soon detected. . . . The appearance and manner, the voice, the gestures, the readiness and promptness of the answers, the evasions, the reluctance, the silence, the contumacious silence, the contradictions, the explanations, the intelligence or the want of intelligence of the witness, the passions which move or control—fear, love,

hate, envy, or revenge—are all open to observation, noted and weighed by the jury.' "

Live testimony can give rise to contradictions and a demeanor which puts an entirely different light on the bare word. Such contradictions and such demeanor are properly the burden of the offering party. Indeed, some courts go so far as to say demeanor can be used to establish facts contrary to the words used by the witness. For example, Learned Hand has written:

"It is one thing to put in a statement of a person not before the jury: that is indeed hearsay bare and unredeemed. But it is quite a different matter to use them when the witness is before the jury, as part of the evidence derived from him of what is the truth, for it may be highly probative to observe and mark the manner of his denial, which is as much a part of his conduct on the stand as the words he utters. Again and again in all sorts of situations we become satisfied, even without earlier contradiction, not only that a denial is false, but that the truth is the opposite: 'The lady doth protest too much, methinks.' This is not to rely upon the statement as a ground of inference, taken apart from the sum of all that appears in court; it is to allow the jury to use the whole congeries of all that they see and hear to tell where the truth lies. We and other courts have a number of times allowed this course to be taken. Indeed to deny this is to hold that nothing that comes from a witness on the stand can be used in support of the issue except his words under oath: the rest of his conduct may be used to refute what he asserts, but for nothing else. In short, out of the whole nexus of his conduct before the jury, they may treat those words alone

as affirmatively relevant." (footnote omitted)

United States v. Allied Stevedoring Corp., 241 F.2d 925, 933 (2d Cir. 1957), cert. denied, 353 U.S. 984, 77 S.Ct. 1282, 1 L.Ed.2d 1143 (1957). This Court has recognized the value to the fact finder of contradictions which were the consequence of live testimony. Husband v. Wife, Del.Supr., 253 A.2d 63 (1968). The Supreme Court of the United States has emphasized the importance of live testimony in factual determinations where credibility is a factor. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 495, 71 S. Ct. 456, 468, 95 L.Ed. 456 (1951). Even the cases which hold that, given an adequate opportunity for cross-examination, a physical confrontation of the witness before the defendant, Court and jury is not required by Confrontation Clause of the Sixth Amendment emphasize the value "of compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Mattox v. United States, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L. Ed. 409, 411 (1895); Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934, 937 (1965).

The witness's presence before the tribunal is important because his demeanor while testifying will enable the trier of fact to better determine the worth of his testimony. See 5 Wigmore, *supra,* at 126. This is why the hearsay rule requires that the tribunal observe the witness testifying in order to receive his testimony.[5] A witness's demeanor is part of his testimony. Thus, to truly present a witness's testimony, the offering party, where practicable,

5. Wigmore's observation that personal presence may be dispensed with if unavailable, 5 Wigmore, *supra,* § 1396 at 127, seems irrelevant in regard to 11 Del.C., § 3509 since the Statute presupposes the declarant's availability. Even if the declarant refutes the out-of-court statement or says he has no present memory of the pertinent facts, the jury can better judge that claim and the prior out-of-court statement by seeing the declarant on the witness stand. See DiCarlo v. United States, 6 F.2d 364, 368 (2d Cir. 1925), cert. den. 286 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925).

should present the witness. The importance of demeanor evidence is especially great in jury trials. It has been recognized that the need for controlling the use of hearsay is most pronounced in jury cases. McCormick, *supra,* § 327 at 755. Indeed, some of the evidence modifications in England may be due to the expanded use of trials by court alone.

I recognize that enforcement of the hearsay rule in certain instances has troubled the courts and commentators because blind adherence to the rule has caused the loss of probably reliable, valuable testimony. The law has been influenced by statutory changes. State v. Henson, Del.Super., 319 A.2d 43 (1974), aff'd. Del.Supr., 332 A.2d 773 (1975). The rules are in a state of evolution and minds, including those on appellate courts, must remain open. In particular, I note the contention that affirmative use of the prior statements of witnesses has been barred even though such statements could be thoroughly and properly tested. The loss of this evidence led to a movement to admit the prior statements of witnesses who are available for cross-examination. This movement was countered with a concern that too much liberalization of the hearsay rule would encourage the use of prepared statements in lieu of testimony.[6] See McCormick, *supra,* § 251 at 602–03. One result is a position between the extremes. The recently adopted Federal Rules of Evidence, after Congressional modification, have redefined hearsay to permit the substantive use of a "[p]rior statement by [a] witness [where t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with his testimony and is

offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . ." Rule 801(d)(1). See U.S.Code, Congressional and Administrative News, No. 12A, January 15, 1975.

Thus, even the draftsmen of the Federal Rules, which make admissible for substantive purposes much evidence that was not heretofore so admissible, have rejected as a general rule the more extreme position taken by the Model Code of Evidence and the Uniform Rules of Evidence. See also California v. Green, 399 U.S. 149, 161, 90 S.Ct. 1930, 26 L.Ed.2d 489, 499 (1970) and Elmer v. State, 20 Ariz. 170, 178 P. 28, 29 (1919). The Model Code and the Uniform Rules can be interpreted as allowing the substantive use of an available declarant's statement without requiring the proponent of the statement to place the declarant's demeanor before the trier of fact. Model Code Rule 503(b) and Uniform Rule 63(1). But this unnecessarily diminishes the trustworthiness of the evidence utilized by the judicial process. Although there are reasons for allowing prior statements, such as the problem of the turncoat witness, they do not justify dispensing with an available appearance which can be crucial to a jury's evaluation of the evidence. Demeanor evidence has long been held to be a valuable qualifier of bare statements. The proponent of the declarant's testimony cannot dispense with demeanor evidence without some risk of failing to present his case accurately. In a criminal prosecution, the State must present the facts accurately. See Bennett v. State, 3 Storey 36, 164 A.2d 442 (Sup.Ct.1960). If the Statute is interpreted to require that the offering party supply available demeanor evidence when it wishes to supply what is in effect testimonial evidence, it will, in my judgment, serve the best policy of both evidence and criminal law.

---

6. This concern seems especially valid in the criminal trial context because the statements are often prepared by expert adversaries, that is, police officers and prosecutors, and then presented by the same experts in Court.